**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

FISHER SAND & GRAVEL, CO.                          )
d/b/a SOUTHWEST ASPHALT PAVING and                 )
FISHER SAND & GRAVEL - NEW MEXICO, INC.            )
                                                   )
                    Plaintiff,                     )
                                                   )
v.                                                 )   Case No. 1:10-cv-00635-RB-DJS
                                                   )
FNF CONSTRUCTION, INC.,                            )
PULICE CONSTRUCTION, INC.,                         )
GARY GIRÓN, individually and as Cabinet Secretary  )
of the New Mexico Department of Transportation,    )
MAX VALERIO, individually and as Deputy Secretary  )
of the New Mexico Department of Transportation,    )
JED BILLINGS, Chief Executive Officer              )
of FNF Construction, Inc., and                     )
STEPHEN BASILA,                                    )
President of Pulice Construction, Inc.             )
                                                   )
                    Defendants.                    )

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants Gary Girón and Max Valerio's

Motion to Dismiss. (Doc. 17.)  Having considered the parties' memoranda, the relevant case law,

and otherwise being fully informed, the Court GRANTS IN PART and DENIES IN PART

Defendants Gary Girón and Max Valerio's Motion to Dismiss.

## I.      PROCEDURAL BACKGROUND

This suit arose out of a request for bids by the New Mexico Department of Transportation

(NMDOT) on a highway construction project proposed for Doña Ana County, New Mexico

(Las Cruces Highway Construction Project).  Plaintiff Fisher Sand & Gravel-New Mexico, Inc.

(Fisher NM)[1] proved the lowest bidder on the Project; however, NMDOT decided to reject all of the initial bids and re-bid the project a second time, as promoting the best interests of the public. Plaintiffs filed a Complaint (Doc. 1) on July 6, 2010, claiming that NMDOT's rejection of Fisher NM's initial bid was the result of Defendants' unlawful actions.  Plaintiffs alleged ten separate counts of wrongdoing, including the two counts against Girón and Valerio, which are at issue here.  Defendants Girón and Valerio then filed a Motion to Dismiss (Doc. 17), arguing that dismissal of Counts VII and IX is appropriate (1) because Plaintiffs' § 1983 claim for violation of the due process clause is not plausible under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) and barred by qualified immunity, and (2) because the claim against Valerio for tortious interference with contractual relations is barred by the New Mexico Tort Claims Act.

## III.    STATEMENT OF FACTS

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the non-moving party. *Moffett v. Haliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002).  The Court need not, however, accept Plaintiffs' conclusory allegations as true when considering their Rule 12(b)(6) motion. *Id.*  Accordingly, what follows is a brief statement of facts based on Plaintiffs' non-conclusory factual allegations in their Complaint.

NMDOT opened bidding for the Las Cruces Highway Construction Project on May 29, 2009. Plaintiff Fisher NM was the lowest bidder on the project, and Defendant FNF Construction, Inc. (FNF) was the second lowest bidder. (Compl. ¶¶ 26, 83.)  On June 18, 2009 the NMDOT Bid Review Committee recommended to the Federal Highway Administration (FHWA) that Plaintiffs

1. Fisher Sand & Gravel - NM (Fisher NM) is a subsidiary of Fisher Sand & Gravel, Co. (FSG). (Compl. ¶ 35.) In their Motion to Dismiss, Defendants refer collectively to Fisher NM and FSG as "Fisher." (Doc. 17 at 1.)  For clarity, however, the Court will refer to the entities individually as Fisher NM or FSG, as they are referenced in the Complaint.

2

(Fisher NM and/or FSG[2]) be awarded the contract for the Project. (Compl. ¶¶ 90, 197, 216.)  As the project was to be financed in part using federal funds obtained through the American Recovery and Reinvestment Act of 2009, final approval from the FHWA was required prior to awarding the contract to the lowest responsible bidder. (Doc. 37 at 3; Doc. 1-15, Ex. M.)  On June 22, 2009, FHWA advised NMDOT that it would need at least fourteen days to make a determination, and NMDOT requested that Fisher NM agree to an extension of the time to award the contract until July 6, 2009. (Compl. ¶ 91.)  Under NMDOT Standard Specifications for Highway and Bridge Construction § 103.2, Award of Contract, NMDOT is required to obtain consent from the "lowest responsible bidder" if it does not award the contract within thirty days of the opening of bidding. (Compl. ¶ 92).

Beginning on June 22, 2009, Defendant FNF Construction, Inc. (FNF) began to make *ex parte*, disparaging, malicious, fraudulent, and intentionally inaccurate and false statements about Fisher NM in an effort to induce NMDOT to reject Plaintiffs' bid and award the project to FNF. (Compl. ¶¶ 94–97.)  For instance, on June 22, 2009, FNF sent an e-mail to NMDOT, without copying Fisher, inquiring whether Fisher had disclosed the Deferred Prosecution Agreement (DPA) it had entered into with the U.S. Justice Department on May 5, 2009 in its bid documents and stating that Fisher NM would violate the DPA if it had not made a proper disclosure to NMDOT. (Compl. ¶¶ 98, 112.)  The e-mail also falsely indicated that Fisher NM had recently been convicted of a crime, and FNF threatened litigation and/or a formal bid protest if the New Mexico Project were awarded to Fisher NM. (Compl. ¶ 98.)

Over two years prior to the filing of Plaintiffs' Complaint, FSG and several of its former officers were indicted for tax fraud. (Compl. ¶ 31.)  After the indictment, FSG separated from the

---

2. The Complaint indicates alternatively that Fisher NM or FSG was recommended for the Project.

indicted corporate officers and entered into negotiations to defer prosecution of FSG, so that it could continue to do business, but with a new management structure. (Compl. ¶ 34.)  On May 5, 2009, a court approved a DPA between the Justice Department and FSG: it provided that, so long as FSG complied with all the terms of the DPA, the government would seek dismissal of the indictment within thirty days of the expiration of the deferral period on December 31, 2011. (Compl. ¶ 35; Ex. A, Doc. 1-3 at 13.)  Fisher NM disclosed the DPA to NMDOT on May 29, 2009. (Compl. ¶ 38.)

On June 8, 2009, in response to inquiries made by NMDOT about the indictment and DPA, FSG & Fisher NM sent a letter to NMDOT indicating that the company "has continued to do business in the various states where [it] operate[s]," that it "has not been suspended or debarred by any state or the federal government as a result of the indictment," that it "has not been convicted of a criminal offense," and that it "has taken very significant steps in response to the allegations that demonstrate it is a presently responsible contractor." (Ex. J., Doc. 1-12 at 3–4.)  Accordingly, NMDOT was apprised of Plaintiffs' situation, and under the terms of the DPA, FSG and its subsidiaries were permitted to continue to do business as usual under their new management structure. (Compl. ¶ 34.)  At this point, NMDOT did not disbar or suspend Fisher NM or reject its bid under any of the grounds listed in §§ 102.5 or 102.10 of the NMDOT Standard Specifications for Highway and Bridge Construction; instead, the NMDOT Bid Review Committee recommended to FHWA that Fisher NM and/or FSG be awarded the contract. (Compl. ¶¶ 90 & 216.)

Nonetheless, after recommending Fisher NM to FHWA, NMDOT apparently became influenced by FNF's *de facto* bid protest and its *ex parte* communications with the construction company, which began with the June 22, 2009 e-mail and continued with NMDOT holding a conference call with FNF and its attorney on June 24, 2009, to discuss the "FNF/Fisher" situation. (Compl.  ¶ 100.)  On July 10, 2009, NMDOT changed its earlier recommendation to FHWA,

4

concluding instead that FNF should receive the construction project. (Compl. ¶¶ 104–05.) Plaintiffs assert that FNF's *ex parte* communications with NMDOT were contrary to the statutes and regulations controlling the bidding process, and that under the terms of the New Mexico Procurement Code (NMSA § 13-1-28 *et seq*.) and the NMDOT Standards for Highway and Bridge Construction §§ 102–03, FNF's actions constituted a *de facto* bid protest requiring notice and due process to Fisher NM, and it was unlawful for such a protest to be conducted covertly. (Compl. ¶ 95; Doc. 37 at 2–5.)

FHWA refused to consent to NMDOT's proposal to award the contract to FNF. (Compl. ¶¶ 109, 115.) Consequently, on July 28, 2009, NMDOT decided to reject all bids under NMDOT Standard Specifications for Highway and Bridge Construction § 103.1, Consideration of Bids, "as not promoting the best interests of the public." (Compl. ¶ 115.) That same day, former chief counsel for NMDOT indicated to Fisher NM that the decision to re-bid the project was based on two factors: (1) FNF's communications about FSG with NMDOT; and (2) NMDOT's concerns that FNF would initiate a bid protest or lawsuit if the project were awarded to Fisher NM. (Compl. ¶ 116.) Plaintiffs FSG and Fisher NM have since filed a bid protest, administrative appeal, and various lawsuits arising out of these incidents, including the present action.

## III.   LEGAL STANDARD

"[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.' " *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). Accordingly, when reviewing the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6), the Court "must determine whether the complaint sufficiently alleges facts supporting *all the elements* necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149,

1160 (10th Cir. 2007) (emphasis added). This obligation to provide the factual "grounds" upon which the plaintiff is entitled to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Finally, in making its determination, the Court must accept all well-pleaded factual allegations as true, viewing them in the light most favorable to Plaintiffs, and drawing reasonable inferences therefrom. *Id.* at 555–56; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Defendants also raise a defense of qualified immunity. "Although summary judgment provides the typical vehicle for asserting a qualified immunity defense," it may also be asserted in the context of Rule 12(b)(6). *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). Thus, when considering a Rule 12(b)(6) motion in the context of qualified immunity, a trial court may dismiss a complaint for failure to state a claim where the plaintiffs failed to allege facts establishing a plausible constitutional violation, or it is clear that the constitutional rights plaintiffs assert were not clearly established. *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995) (explaining that plaintiff bears a "heavy two-part burden" once defendant invokes qualified immunity).

## IV.   ANALYSIS

Defendants request **(A)** that the Court dismiss Plaintiffs' § 1983 due process claim against Defendants Girón and Valerio (Count IX, Doc. 1 at 42) because Plaintiffs failed to allege sufficient facts to establish a plausible claim for relief of their procedural or substantive due process rights under *Twombly*, 550 U.S. 544, because Plaintiffs failed to allege sufficient facts to give notice to individual Plaintiffs Girón and Valerio, because Defendants are entitled to qualified immunity, and because Plaintiffs cannot sue Girón and Valerio for monetary damages in their official capacity; Defendants request **(B)** that the Court dismiss Plaintiffs' claim for tortious interference with prospective and existing contractual relations against Valerio (Count VII, Doc. 1 at 37) as barred

by the New Mexico Tort Claims Act.

**A.      Count IX: § 1983 Due Process Claim (Girón & Valerio)**

"A § 1983 complaint needs but two allegations to state a cause of action: (1) that the plaintiff was deprived of a federal right; and (2) that the person who deprived him acted under color of state law." *Choate v. Lemmings*, 294 F. App'x 386, 392 (10th Cir. 2008) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).  It is uncontested that NMDOT is a state actor; therefore, the only question before the Court is whether NMDOT deprived Plaintiffs of a federal right.  Defendants Girón and Valerio request dismissal of the claims against them under Federal Rule of Civil Procedure 12(b)(6), asserting Plaintiffs failed to plead sufficient facts to show the violation of a federally-protected right, or in the alternative, they are entitled to qualified immunity.

*1.      Fair Notice of Individual Claims Against Girón and Valerio*

Defendants argue that Plaintiffs' allegations failed to put the individual Defendants (Girón and Valerio) on notice of the claims against them. (Doc. 17 at 13–17; Doc. 47 at 16–18.) Specifically, Defendants assert that the allegations failed to show personal, intentional conduct by Girón and Valerio to violate Plaintiffs' rights. (Doc. 17 at 13.)  The allegations, however, allege that, at a minimum, Girón and Valerio used their position and authority to deprive Plaintiffs of the process they were due under New Mexico law.  Accordingly, dismissal is not appropriate for insufficient notice, as the allegations put the individual Defendants on notice of their allegedly unlawful acts.

A complaint must provide fair notice of the claims and allegations against each individual defendant.  Under Federal Rule of Civil Procedure 8(a), a plaintiff must plead his or her claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 544.   This notice pleading standard and *Twombly's*

7

"requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins*, 519 F.3d at 1248.  In the determination of what constitutes "fair notice" to defendants, the Court must consider the nature of the claim and the elements required to prove the claim. *Id.* (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 231–32, 239–40 (3d. Cir. 2008)).  "A simple negligence action based on an automobile accident may require little more than the allegation that the defendant negligently struck the plaintiff with his car while crossing a particular highway on a specified date and time." *Id.*  A complex § 1983 case, however, requires more specificity in the factual pleadings, and "[t]he *Twombly* standard may have greater bite in such contexts." *Id.* at 1249.

> In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities.  Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.

*Id.* at 1249–50.  Accordingly, "the burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants." *Id.* at 1250.  Additionally, the Tenth Circuit has criticized the use of the "collective term 'Defendants' . . . with no distinction as to what acts are attributable to whom" because "it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Id.*

In their Complaint, Plaintiffs make several allegations concerning the participation of Defendants Girón and Valerio in the alleged constitutional violations.  Generally, Plaintiffs allege that Girón and Valerio participated in an unlawful *de facto* bid protest, in which they engaged in ex parte communications with Defendant FNF, and passed this information on to the NMDOT Bid

Review Committee in order to undermine Fisher NM's bid and award the Project to FNF without providing Plaintiffs appropriate notice or due process to respond to the allegations raised against them. (Compl. ¶¶ 94, 98–99, 104, 108, 242, 245, 247, 249.)  Additionally, Plaintiffs allege that Valerio attempted to convince FHWA to go along with NMDOT's decision to award the Project to FNF rather than Fisher NM, even though Fisher NM proved the lowest bidder. (Compl. ¶¶ 105, 110.)  Next, Plaintiffs allege that when FHWA refused to consent to award the Project to FNF, Girón and Valerio worked to find a way to reject Fisher NM's bid so that they could award the Project to FNF rather than Fisher NM. (Compl. ¶¶ 107, 111, 242, 251.)  After FHWA refused to consent to award the project to FNF, Girón and Valerio decided to reject all of the bids under NMDOT Specification § 103.1. (Compl. ¶ 115.)  Finally, Plaintiffs allege that FNF worked in concert with NMDOT officers Girón and Valerio to violate the substantive and procedural requirements of the Procurement Code and NMDOT Specifications to deprive Plaintiffs of a liberty or property interest they possessed in the Las Cruces Highway Construction Project and their fundamental right to procedural fairness. (Compl. ¶¶ 240–41.)

In Count IX of the complaint, Plaintiffs identify two primary legal theories upon which they base their § 1983 claim against Defendants FNF, Girón, and Valerio: (1) that Defendants violated Plaintiffs' fundamental right to procedural fairness under the Constitution by violating the requirements of the New Mexico Procurement Code and NMDOT Specifications (Compl. ¶ 241); and (2) that Defendants violated Plaintiffs' right to procedural due process by taking the contract for the Las Cruces Highway Construction Project away from Fisher NM without due process of law, even though NMDOT had already determined that Fisher NM was the lowest responsible bidder, which created a constitutionally protected property right to the contract. (Compl. ¶¶ 243–45.)  Under *Robbins*, 519 F.3d at 1248, the Court must consider whether the Complaint provided "fair notice"

9

to Defendants Girón and Valerio of the grounds upon which Plaintiffs assert the claims against them and whether they pled sufficient facts to satisfy the individual elements and make each claim plausible.

Plaintiffs have clearly stated a plausible claim that Defendants violated the New Mexico Procurement Code, the New Mexico Administrative Code, and NMDOT Specifications for Highway and Bridge Construction.  For instance, under the New Mexico Procurement Act, NMDOT was required to award the contract to the lowest responsible bidder. NMSA § 13-1-108.  This apparently did not happen.  Additionally, in considering the bids for a project, NMDOT must limit its consideration to only that information set forth in the invitation for bids; however, Girón and Valerio considered information provided by FNF and passed it onto the review board. NMSA § 13-1-105; *Planning and Design Solutions v. City of Santa Fe*, 885 P.2d 628, 632–33 (N.M. 1994). Additionally, when NMDOT considers rejecting a bid on responsibility grounds, it must follow the suspension and debarment process set forth in the Procurement Code and Regulations, which requires notice, a hearing, and a written determination. NMSA §§ 13-1-177 through 13-1-180; N.M. ADMIN. CODE § 18.28.4.9.  None of these procedural requirements were followed.  Accordingly, the Complaint alleges several plausible procedural violations.  Whether these violations rise to the level of a substantive or procedural due process right is another issue, but at this point, the Court can at least conclude that Plaintiffs alleged sufficient facts to support a plausible conclusion that Girón and Valerio personally acted to deprive Plaintiffs of the procedural rights to which they were entitled.

Defendants additionally assert, however, that there can be no vicarious liability in this type of suit, and therefore, Plaintiffs had to specifically plead which individual steps each of the Defendants personally took to cause the alleged harm, as each Defendant can only be liable for his individual acts of misconduct. (Doc. 17 at 13–14.)  While this is true, it is important to note that a

defendant can be found to have personally participated in the deprivation of a citizen's rights when he uses his "control or direction" to cause the deprivation of rights, or when he fails to adequately supervise his subordinates. *See Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997). Accordingly, to be liable, it is not necessary that a defendant directly deprived a person of his or her constitutional rights through specific acts taken against the individual; rather, under supervisor liability, it is enough that his deliberate or intentional acts caused or contributed to the violation. *Jenkins v. Wood*, 81 F.3d 988, 994–95 (10th Cir. 1996).

Defendants, nonetheless, persist that *Iqbal*, 129 S. Ct. at 1948–49 and *Lewis v. Tripp*, 604 F.3d 1221, 1227 n. 3 (10th Cir. 2010) drastically narrowed the scope of, or even eliminated, this type of supervisor liability. (Doc. 17 at 14 n. 3.)  This is an incorrect assessment of the law.  In *Lewis*, 604 F.3d at 1227 n. 3, the Tenth Circuit specifically stated that it was not revisiting the standard for supervisor liability in § 1983 cases that it had laid out in *Poolaw v. Marcantel*, 565 F.3d 721, 732–33 (10th Cir. 2009).  Under *Poolaw*, to hold a defendant personally liable for his acts as a supervisor, a plaintiff need only show that the defendants "set in motion a series of events they knew or reasonably should have known would result" in the violation of a plaintiff's constitutional rights. 565 F.3d at 733.  In the case at hand, the Complaint clearly alleges that Defendants knowingly and intentionally participated in a series of acts that were intended to block Plaintiffs from being awarded the Las Cruces Highway Construction Project.  These alleged acts constituted clear violations of New Mexico statutes, rules, and regulations governing the bidding process for state highway construction projects.  Accordingly, the Complaint puts the individual Defendants on notice of the specific grounds for the claims against them.  Whether these alleged acts are sufficient to rise to the level of a federal constitutional violation is another matter that the Court will discuss in more detail below.

11

2.    *Claims Against Girón and Valerio in Their Official Capacities*

In Count IX, Plaintiffs bring a § 1983 action against Defendants Girón and Valerio in both their official and individual capacities. (Doc. 1 ¶¶ 253–54.)  Defendants argue that under § 1983, Plaintiffs cannot bring a suit for money damages against Girón and Valerio in their official capacities as Cabinet Secretary and Deputy Secretary of the New Mexico Department of Transportation. (Doc. 17 at 18.)  Plaintiffs respond that "[t]o the extent Defendants claim they are entitled to dismissal in their official capacities because Fisher has sought only damages, Fisher seeks leave to amend its complaint against them." (Doc. 37 at 19 n. 8.)

Under *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989), Defendants are correct that a suit against a state official in his or her official capacity is barred under the Eleventh Amendment.  This is because a suit against an official in his or her official capacity constitutes a suit against the official's office, and hence, the state, which is not considered a person and not subject to suit under 42 U.S.C. § 1983:

> Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself.

*Will*, 491 U.S. at 71 (internal citations omitted).  However, when a state official is sued in his or her official capacity for injunctive relief, the official is treated as a person under § 1983 because " 'official-capacity actions for prospective relief are not treated as actions against the State.' " *Id*. at 71, n. 10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167, n. 14 (1985)).

The Court will therefore dismiss Plaintiffs' § 1983 claim for money damages against Girón and Valerio in their official capacities under Count IX without prejudice, but allow Plaintiffs to petition the Court for leave to file a curative amendment to the Complaint.  Dismissal with prejudice is a harsh remedy and not appropriate at this point in the litigation. *New York v. Hill*, 528 U.S. 110,

118 (2000) (concluding that dismissal with prejudice is a "harsh remedy"); *Phillips*, 515 F.3d at 245

("the court must permit a curative amendment unless such an amendment would be inequitable or

futile"); *Moya v. Schollenbarger*, 465 F.3d 444 (10th Cir. 2006); *Brereton v. Bountiful City Corp.*,

434 F.3d 1213, (10th Cir. 2006) ("dismissal with prejudice is appropriate where a complaint fails

to state a claim under Rule 12(b)(6) and granting leave to amend would be futile"); *Hall v. Bellmon*,

935 F.2d 1106, 1110 (10th Cir. 1991) ("[T]he plaintiff whose factual allegations are close to stating

a claim but are missing some important element that may not have occurred to him, should be

allowed to amend his complaint.").

### 3.    Procedural Due Process Claim

Defendants next argue that Plaintiffs' substantive and procedural due process claims must

fail because Fisher NM never possessed a property interest in the contract for the Las Cruces

Highway Construction Project, and without such a property interest, there could not have been a

violation of the due process clause of the U.S. Constitution, which only protects one's interest in

"life, liberty, or property." (Doc. 17 at 6.)  The Tenth Circuit "established nearly twenty-five years

ago that to prevail on either a procedural or substantive due process claim, a plaintiff must first

establish that a defendant's actions deprived plaintiff of a protectible property interest." *Hyde Park

Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000).  Accordingly, the Court must

first determine whether Plaintiffs have alleged sufficient facts to establish a constitutionally

protected property interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of

procedural due process apply only to the deprivation of interests encompassed by the Fourteenth

Amendment's protection of liberty and property.").

Plaintiffs argue that they had a property interest in the award of the contract for the Las

Cruces Highway Construction Project, and that they were deprived of this interest without due

process of law when NMDOT changed its earlier recommendation that the contract go to Fisher NM and rejected all bids for the project, ultimately rebidding and awarding the project to a competing bidder. (*See generally* Compl. ¶¶ 80–128 & 239–54.)   In their Motion to Dismiss, however, Defendants argue that Plaintiffs cannot bring a substantive or procedural due process claim because Fisher NM cannot have a constitutionally protected interest in a contract that it bid on, but was not awarded. (Doc. 17 at 6–13.)

"In the context of a procedural due process claim, it is only after the plaintiff first demonstrates the existence and deprivation of a protected property interest that the plaintiff is constitutionally entitled to an appropriate level of process." *Teigen v. Renfrow*, 511 F.3d 1072, (10th Cir. 2007).  The Court must therefore determine whether Plaintiffs had an interest in receiving the benefit of the Las Cruces Highway Construction Project contract. *See Zwygart v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 483 F.3d 1086, 1093 (10th Cir. 2007) ("A person alleging that he 'has been deprived of his right to procedural due process' must prove two elements: [1] that he possessed a constitutionally protected liberty or property 'interest such that the due process protections were applicable,' and [2] that he was not 'afforded an appropriate level of process.' " (quoting *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994))).

The Tenth Circuit has indicated that "[v]alid contracts may constitute a property interest for purposes of due process." *Southern Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1265 (10th Cir. 1998).  To determine whether or not Plaintiffs possessed a property right in the highway construction contract, rather than just a unilateral expectation of receiving the contract for being the lowest responsible bidder, the Court must look to state law:

> The procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit': To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a

14

> unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.  Such entitlements are, of course, not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.

*Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (internal quotations, citations, and ellipsis omitted); *see also Roth*, 408 U.S. at 577.  One source of state law the Court may call upon are the rules and regulations governing the bidding and approval of state-funded development projects. *See Circa Ltd. v. City of Miami*, 79 F.3d 1057, 1060 (11th Cir. 1996) ("The existence of a property right is determined not by federal law, but by existing rules or understandings such as state law.").  Thus, while Defendants cite to numerous cases indicating that similar plaintiff-bidders on state or municipal contracts did not have property rights (Doc. 17 at 7–8), these cases are not necessarily controlling because they do not specifically interpret the New Mexico Procurement Code or NMDOT's Standard Specifications for Highway and Bridge Construction (NMDOT Standard Specifications), which are the primary New Mexico legal authorities controlling the bidding process in the case at hand.  If these laws and regulations require that the lowest responsible bidder be awarded the contract, without exception, then a property interest in the Las Cruces Highway Construction Project contract was established by NMDOT's determination that Fisher NM was the lowest responsible bidder. *See* N.M. STAT. ANN. § 13-1-108 ("A contract solicited by competitive sealed bids shall be awarded with reasonable promptness by written notice to the lowest responsible bidder.").

Despite the above-quoted statute, these same rules and regulations provide NMDOT with broad discretion to reject any or all project bids in the best interests of the agency or public. *See Planning and Design Solutions*, 885 P.2d at 633 ("a municipality has 'wide discretion' to accept or reject offers").  For instance, the New Mexico Procurement Code provides that "[a]n invitation for

15

bids, a request for proposals or any other solicitation may be canceled or any or all bids or proposals may be rejected in whole or in part when it is in the best interest of the state agency or a local public body." NMSA § 13-1-131.  Additionally, NMDOT Standard Specifications for Highway and Bridge Construction § 103.1 provides that NMDOT reserves the right to reject any or all Bids . . . or to advertise for new Bids if, in the judgment of [NMDOT], the best interests of the public would be promoted thereby."   This discretion, however, becomes more limited once NMDOT makes a determination or awards a contract, and subsequent rejection may constitute "an unlawful departure from its own rules." *Planning and Design Solutions*, 885 P.2d at 633.

Determining exactly when a contract has been awarded is complicated, as the State Procurement Code and NMDOT Standard Specifications contemplate "[t]he 'award of a contract' . . . occurs over time in steps." *Renaissance Office, LLC v. General Servs. Dept.*, 31 P.3d 381, 388  (N.M. Ct. App. 2001).  Under the NMDOT Standard Specifications, the first step in the process is the "Invitation for Bids" (§ 102.1); the next step is the "Bid Opening" (§ 102.15); then comes the "Consideration of Bids" (§ 103.1); followed by the "Award of Contract" (§ 103.2); and finally, the "Execution and Approval of Contract" (§ 103.7).  The rights and remedies for the parties at each stage of the process change.  For instance, the reasons for which NMDOT may reject an award or cancel an award of a contract vary depending upon the stage of the bidding and award process. *See* Standard Specifications §§ 102.5, 103.1 & 103.4.  Notably, an award of a contract may only be cancelled "without [NMDOT] incurring liability where such cancellation is in the best interests of the Department." Standard Specifications § 103.4.   Similarly, the New Mexico Procurement Code distinguishes between "Remedies prior to execution of contract" and "Ratification or termination after execution of contract." *Compare* NMSA § 13-1-181 *with* NMSA § 13-1-182.

Plaintiffs assert in their Response that the NMDOT Bid Review Committee made a written "Determination" that Fisher NM was the lowest responsible bidder and would be awarded the contract, pending approval of the FHWA, and that this Determination was made in writing and Fisher NM was promptly informed of it. (Doc. 37 at 11–12.)  In the Complaint, Plaintiffs allege that "[t]he bid review committee recommended FSG for award of the NM Project" (Compl. ¶ 216);  that "[o]n two occasions, NMDOT requested Fisher NM agree to extend the time to award the contract on the NM Project" (Compl. ¶ 248.); and that before NMDOT decided to cancel all of the bids, FHWA had concurred in NMDOT's earlier decision to award the Project to Fisher NM and refused to concur with NMDOT's request to reject Fisher NM's bid in favor of FNF. (Compl. ¶¶ 108–09.)  In other words, NMDOT had recommended Fisher NM, and FHWA had approved the award of the contract to Fisher NM before NMDOT decided to reject all bids.

Based on these factual allegations, it thus appears that some form of an "Award of Contract" under Standard Specifications § 103.2 may have occurred prior to NMDOT's rejection of all bids under Standard Specifications § 103.1, Consideration of Bids, "as not promoting the best interests of the public." (Compl. ¶ 115.)  NMDOT Standard Specification § 103.2 requires that "the Department will award the Contract within 30 Days after the opening of Bids to the lowest Responsible bidder," but that the "Bidder may agree to a later award time if requested to do so by the Department."  Additionally, § 103.2 states that "[u]nless [NMDOT] determines to reject all Bids [NMDOT] will notify the lowest Responsible Bidder in writing that its Bid has been accepted and that is has received preliminary Award of the Contract."  Accordingly, Plaintiffs argue that once NMDOT made a Determination that Fisher NM was the lowest responsible bidder and notified the company of this in writing, Fisher NM obtained a property right in the award of the construction contract, and NMDOT no longer had discretion to reject all bids or award the contract to another

17

bidder without providing Fisher NM with appropriate due process. (Doc. 37 at 12–13.)

As previously stated, " '[a] person's interest in a benefit is a 'property' interest for due process purposes if there are . . . rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.' " *Curtis Ambulance of Fla., Inc. v. Bd. of County Comm'rs*, 811 F.2d 1371, 1375–76 (10th Cir. 1987) (quoting *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)).  In the case at hand, it appears that under the NMDOT Standard Specifications, Defendants actions may have created an entitlement in Fisher NM to the Las Cruces Highway Construction Project contract, that is, Fisher NM may have had "more than a unilateral expectation" the contract would be awarded to it. *Roth*, 408 U.S. at 577.  In the end, this determination is a fact-intensive inquiry that can only "be decided on a case-by-case basis through review of the implicated state law." *Buckley Constr., Inc. v. Shawnee Civic & Cultural Develop. Auth.*, 933 F.2d 853, 857–58 (10th Cir. 1991).  In *Buckley*, the Tenth Circuit granted the defendants' motion to dismiss under Rule 12(b)(6) because the plaintiffs failed to allege any facts indicating that the company was or should have been determined the successful bidder and awarded the contract. *Id*. at 858–59.  The case at hand, however, is factually distinct, as the Complaint may reasonably lead the Court to conclude that Fisher NM had been, at least preliminarily, awarded the contract, or alternatively, that it should have been awarded the contract under New Mexico law. *Id*.

Defendants argue that "[a] quick review of the complaint . . . reveals that what [Plaintiffs] now cast as a 'Determination' was nothing more than NMDOT's bid review committee—which is not the ultimate decision-maker regarding who will be awarded a [NMDOT] contract . . . ." (Doc. 47 at 4.)  Additionally, Defendants assert that the FHWA "had to concur in the recommendation to award Plaintiffs the contract," but that the "FHWA never provided concurrence." (Doc. 47 at 22.)  In the Complaint, however, Plaintiffs allege that "[o]n July 13, 2009,

18

FHWA indicated via letter that it deemed FSG to be a responsible bidder and on July 16, 2009, refused to concur in NMDOT's request to reject Fisher NM's bid in favor of FNF." (Compl. ¶ 109.) That would indicate that this last condition precedent to the award of the contract had been satisfied.

Ultimately, these factual issues are disputed by the parties, precluding dismissal under Rule 12(b)(6). "[O]n a motion to dismiss, [the court] evaluate[s] the legal, not the factual, basis of the complaint." *Pierce v. Gilchrist*, 359 F.3d 1279, 1300–01 (10th Cir. 2004). Accordingly, the party requesting the motion to dismiss cannot attack the validity of the underlying facts, only the sufficiency of the factual allegations alleged in the complaint. Based on the Complaint, it is at least a plausible conclusion that NMDOT decided to award the contract to Fisher NM and made this recommendation to FHWA, and that the FHWA concurred in this decision, plausibly creating more than a unilateral expectation of an award of the contract. *See Twombly*, 550 U.S. at 560 ("requirement of plausibility"). If Defendants wish to challenge the factual allegations of the Complaint, they must do so on summary judgment.

Another way to look at this dispute is whether Fisher NM's bid and NMDOT's "Determination" that it was the lowest responsible bidder constituted a valid offer and acceptance under contract law. While a contractor bidding on a public project generally does not have a constitutionally protected property interest in the contract merely for having placed a bid, Plaintiffs argue that this case is distinct because NMDOT's conduct and its representations concerning the bid to Fisher NM created an implied contract. (Doc. 37 at 8.) Indeed, to be enforceable, a contract does not have to be in writing, as "the law of contracts in most, if not all, jurisdictions long has employed a process by which agreements, though not formalized in writing, may be 'implied.' " *Perry*, 408 U.S. at 601–02.

In their Reply, Defendants argue that what Fisher NM and NMDOT had was an implied

contract that NMDOT would follow proper procedure as established by New Mexico law, and that Plaintiffs cannot pursue a § 1983 due process claim based on this type of implied contract. (Doc. 47 at 10.)  This is indeed a correct statement of the law, as "it is well established that an entitlement to nothing but procedure cannot be the basis for a property interest." *Robbins*, 438 F.3d at 1085 (internal quotations omitted).  "Process is not an end in itself," but only serves "to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).  Thus, while the Court can look to the New Mexico's statutes and procedures for awarding construction projects to determine whether a constitutionally protected property interest exists, "the procedures cannot themselves constitute the property interest." *Teigen*, 511 F.3d at 1081.  "Where state law is not sufficiently restrictive to create a property interest in the underlying decision, there can be no property interest in the procedure used to make that decision." *Id*.

In *Planning and Design Solutions*, 885 P.2d at 637, for instance, the New Mexico Supreme Court concluded that the plaintiff had a right to a fair and equitable review of its bid, but not the construction contract: "there was no formal contract between [the contractor] and the City, but we do find an implied contract that the City would consider the bids in accordance with the [Procurement] Code."  Accordingly the Court "awarded to the disappointed bidder the expenses incurred in preparing and submitting a bid." *Id*. at 636.  Similarly, in the case at hand, it appears that there was a breach of the New Mexico Procurement Code and the NMDOT Standard Specifications for Highway and Bridge Constructions; however, even assuming arguendo that there was such a breach, this alone would not constitute a recognized property interest protected by the due process clause of the U.S. Constitution.  In other words, a procedural right to a fair and equitable review of a bid does not constitute a constitutionally protected property interest.

In the case at hand, however, Plaintiffs assert more than just a procedural right; they allege that the governing laws and circumstances surrounding the bidding process show a mutual understanding between the parties that Fisher NM had been, or would be, awarded the contract.  In their Response (Doc. 37 at 8 & 15), Plaintiffs confuse the issue of an implied contract by conflating the two distinct types of implied contracts—the one giving rise to a constitutionally protected property right and potential § 1983 claim, *Perry*, 408 U.S. at 601–02, and the other providing the disappointed bidder with nothing more than a state cause of action for its costs in preparing the bid, *Planning and Design Solutions*, 885 P.2d at 635.   Nonetheless, Plaintiffs clearly state that "Defendants created in Fisher a mutual, explicit, understanding that Fisher's bid had been accepted as the lowest Responsible Bid, and that Fisher was being and would be awarded the contract unless the FHWA declined to agree to that award." (Doc. 37 at 15.)  Citing to *Perry*, 408 U.S. at 601–02, Plaintiffs argue that because of Defendants' actions and statements, Fisher NM's belief and understanding that it would be awarded the contract was "far more than a 'unilateral expectation,' as Defendants claim, but was a legitimate, state-created mutual understanding of the kind that gives rise to a property right in the award of the contract." (Doc. 37 at 15–16.)  Defendants dismiss Plaintiffs' implied contract argument as a purely procedural argument that cannot support a § 1983 claim; however, there is more to the argument than that.

Under New Mexico contract law, a request for bids on a public works project does not constitute an offer, but rather a request for offers. *Planning and Design Solutions*, 885 P.2d at 635. The bidders then make offers to the state agency, and a contract occurs when the State accepts one of the offers. *Id*.   "In order to constitute a binding contract, there must be an unconditional acceptance of the offer made." *Silva v. Noble*, 515 P.2d 1281, 1282 (N.M. 1973).  Citing to Paragraphs 92 & 101 of the Complaint, Plaintiffs argue that such an acceptance of their offer

21

occurred because NMDOT made "explicit statements to Fisher to the effect that it would award the contract to Fisher upon the approval by the FHWA." (Doc. 37 at 15.)  Paragraphs 92 & 101 clearly indicate that NMDOT had determined that Fisher NM was the lowest responsible bidder; however, they do not indicate what information was communicated to Fisher NM concerning the award of the contract.  Defendants argue that there was never an award of the contract to Fisher NM, and that the alleged "Determination" to award them the contract was only made by the Bid Review Committee, which lacked final decision-making authority. (Doc. 47 at 4.)  Additionally, Defendants argue that "FHWA never provided concurrence to award Plaintiffs the contract," which was a prerequisite to Fisher NM receiving the contract. (*Id*.)  Nevertheless, the Complaint contradicts this assertion. (Compl. ¶ 109.)  Viewing these factual allegations in the light most favorable to Plaintiffs, it seems a plausible conclusion that NMDOT recommended Fisher NM for the contract and that the FHWA then concurred in this decision.

What is not clear are the communications between NMDOT and Plaintiffs, and whether the parties ever reached a mutually explicit understanding that Fisher NM would be awarded the contract.  Still, viewing the allegations in the light most favorable to Plaintiffs, it is plausible that such an exchange may have taken place, and the Complaint "give[s] the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir.2007).  This is not the time to resolve the parties' factual disputes, and "[u]nder New Mexico law, the question of whether a contract has been formed is a question of fact." *Ratner v. MRC Partnership*, 1998 WL 567972, at * 4 (10th Cir. 1998) (citing *Stites v. Yelverton*, 289 P.2d 628, 630 (N.M. 1955); *Balboa Constr. Co., Inc. v. Golden*, 639 P.2d 586, 590 (N.M. Ct. App. 1981).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's

complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

The parties clearly dispute whether they had arrived at a mutually explicit understanding with regard to the award of the contract; however, this factual dispute is better resolved on a motion for summary judgment.  While the Complaint could be clearer on this issue, one can draw a plausible conclusion that such an understanding was reached by the parties.  In their Response, Plaintiffs assert that "Defendants created this understanding by making explicit statements to Fisher to the effect that it would award the contract to Fisher upon approval by the FHWA." (Doc. 37 at 15.)  It would have been helpful if Plaintiffs had included more specific allegations in the Complaint; nonetheless, the Plaintiffs' allegations are sufficient, if only barely, to survive a Rule 12(b)(6) motion to dismiss.  The parties may then test the evidentiary basis for whether a mutually explicit understanding existed on summary judgment.

Finally, Defendants argue that, "even if Plaintiffs could show Valerio and Girón's conduct clearly was unlawful under New Mexico law, such a showing is insufficient to overcome qualified immunity." (Doc. 47 at 15; Doc. 17 at 18.)   Section 1983 "establishes a cause of action only for deprivation of rights secured by the Constitution or federal law." *Trujillo v. Williams*, 465 F.3d 1210, 1214 n. 2 (10th Cir. 2006); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002).  And for there to have been a due process violation, Plaintiffs must have possessed a constitutionally protected property interest. U.S. CONST. amend. XIV § 1 ("nor shall any state deprive any person of life, liberty, or property, without due process of law").  Accordingly, Defendants argue that, unless the Tenth Circuit or Supreme Court case law clearly establishes a constitutionally protected property interest under the circumstances presented in the case at hand, the "allegations that Valerio and Girón violated New Mexico's

Procurement Code or NMDOT regulations [] are irrelevant." (Doc. 47 at 15.)

It is clearly established under Tenth Circuit law that when a public works contract is awarded to a bidder, the bidder obtains a constitutionally protected property interest in the contract. *Buckley Cosntr., Inc.*, 933 F.2d at 857.  Additionally, it is clearly established that an implied contract arises where there is a "mutually explicit understanding" between the parties, and that such an implied contract may give rise to a property interest for due process purposes. *Perry*, 408 U.S. at 601–02. Finally, "[w]hen protected interests are implicated, the right to some kind of prior hearing is paramount." *Roth*, 408 U.S. 564, 569–70 (1972).  In sum, it is clearly established law that if Defendants' actions created a mutually explicit understanding that Fisher NM had been or was to be awarded the contract, then Defendants could not take away this entitlement without, at a minimum, some kind of prior hearing.  Accordingly, Defendants are not entitled to qualified immunity under the implied contract theory of liability.

Defendants are, however, entitled to qualified immunity if there was no implied contract, but only an interest based on New Mexico law governing the bidding on and award of highway construction projects.  While one might argue that once Fisher NM was determined to be the lowest responsible bidder, this created an entitlement to an award of the contract because the New Mexico Procurement Code requires that "[a] contract solicited by competitive sealed bids shall be awarded with reasonable promptness by written notice to the lowest responsible bidder," NMSA § 13-1-107, this section must be read together with the other sections of the Procurement Code and NMDOT Standard Specifications that allow NMDOT to reject any or all bids when it is in the best interest of the state agency, in the best interests of the public, or for any other good reason. *See* NMSA §§ 13-1-131 & 67-3-43; NMDOT Standard Specifications §§ 103.1 & 103.2.  Additionally, the requirement that the contract go to the lowest responsible bidder is tempered by other

24

considerations, such as, which proposal is "most advantageous to the state agency or a local public body." NMSA § 13-1-117. The Tenth Circuit has recognized that the majority of the circuits have concluded "a disappointed bidder generally does not possess a property interest when the contract is not actually awarded to him." *Buckley Constr., Inc.*, 933 F.2d at 857. Thus, if Plaintiffs' claim of entitlement is based solely on NMDOT's determination that Fisher NM was the lowest responsible bidder, Defendants are entitled to qualified immunity.

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Pierce*, 359 F.3d at 1298. If NMDOT had already promised the Las Cruces Highway Construction Project contract to Fisher NM upon approval of FHWA, then the unlawfulness of NMDOT's behavior in subsequently rejecting the bid without giving Fisher NM notice or an opportunity to respond would have been apparent, such that the officials had "fair notice that the described conduct was unconstitutional." *Id.* However, given the amount of discretion to reject bids provided under New Mexico law, if Defendants rejected the bid before an award of the contract, qualified immunity applies. *See Town of Castle Rock*, 545 U.S. at 756 ("Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.").

In conclusion, Plaintiffs may proceed to summary judgment on their procedural due process claim under the theory that Defendants' actions or statements created a mutually explicit understanding that Fisher NM had been or would be awarded the contract upon final approval from FHWA. Plaintiffs may not, however, proceed under a theory that once Fisher NM was determined to be the lowest responsible bidder, a constitutionally protected property interest arose.[3] Under New

---

3. In a Motion for Leave to Amend Complaint (Doc. 54) and Proposed Amended Complaint (Doc. 54-1) filed February 28, 2011, Plaintiffs allege a third theory for recovery in Count IX, alleging a § 1983 due process claim based on the Harding Construction Project. (Proposed Amended Compl. ¶¶ 312–30.) The Court's Memorandum Opinion and

Mexico law, NMDOT officials still had discretion to reject the bid, even after Fisher NM was determined to be the lowest responsible bidder; therefore, it was not an entitlement. *Id*. at 756. Accordingly, qualified immunity applies to this theory of recovery because a reasonable official would not have understood he was violating a constitutionally protected property interest. *Pierce*, 359 F.3d at 1298.

### 4.    *Substantive Due Process Claim*

Defendants argue that Plaintiffs' substantive due process claim must fail because this constitutional doctrine has been limited by the Tenth Circuit and U.S. Supreme Court to only a very narrow set of "fundamental rights" such as protecting family autonomy, procreation, privacy, medical care decisions, travel, voting, and access to the courts. (Doc. 17 at 12.)  Plaintiffs do not address Defendants arguments against their substantive due process claim in their Response; therefore, the Court concludes that dismissal is appropriate under Rule 12(b)(6) for the reasons discussed below.

The Fourteenth Amendment prohibits a State from depriving a person of life, liberty, or property, without due process of law. CONST. AMEND. XIV.   There are two forms of due process—substantive and procedural.   Plaintiffs claim a violation of both their substantive and procedural due process rights. (Doc. 1 at 42.)  "[S]ubstantive due process is violated whenever a governmental entity deliberately or arbitrarily abuses the government power by, for example, taking actions that are motivated by bias, bad faith, or partisan or personal motives unrelated to the merits of the matter before it . . . ." *Indep. Enter. Inc. v. Pittsburgh Water and Sewer Auth.*, 103 F.3d 1165, 1179 n. 12 (3d Cir. 1997); *see also Daniels v. Williams*, 474 U.S. 327, 331 (1986) (the substantive

_____

Order does not address this additional theory of recovery.  If the Court grants Plaintiffs' Motion for Leave to Amend Complaint, Defendants may file a separate motion to dismiss this separate § 1983 claim at that time.

due process guarantee protects against government power arbitrarily and oppressively exercised); *Curtis v. Oklahoma City Pub. Schs. Bd. of Educ., Indep. Dist. No. 89*, 147 F.3d 1200, 1214–16 (10th Cir. 1998); *Brenna v. S. Colo. State College*, 589 F.2d 475, 477 (10th Cir.1978) (" 'Substantive' due process requires only that termination of [a protected] interest not be arbitrary, capricious, or without a rational basis.").

However, in order for substantive due process to apply, the property or liberty interest that is being violated must be a "fundamental" interest protected by the U.S. Constitution. *Indep. Enter. Inc.*, 103 F.3d at 1179 n. 12; *United States v. Salerno*, 481 U.S. 739, 746 (1987) (" 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty' " (internal citations omitted)).  This is because "[r]ights of substantive due process are founded not upon state provisions but upon deeply rooted notions of fundamental personal interests derived from the Constitution." *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986); *see also Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J. concurring).

Plaintiffs claim that Defendants Girón and Valerio worked in concert with FNF to deprive them of their "fundamental right to procedural fairness." (Compl. ¶ 241.)  The kinds of life, liberty, or property interests that are considered "fundamental," however, are limited, as courts have recognized only very few liberty or property interests that are clearly enshrined by the Constitution. For instance, property ownership is a right or interest that is considered fundamental, and if this interest is arbitrarily interfered with by the government, then a person can claim an interference with his or her substantive due process rights. *Indep. Enter. Inc.*, 103 F.3d at 1179–80.  The Tenth Circuit has never recognized a public contract as constituting a fundamental property interest, and the Third Circuit has clearly rejected such a finding. *See, e.g.*, *Reich v. Beharry*, 883 F.2d 239, 245 (3d Cir.

1989); *Indep. Enter. Inc.*, 103 F.3d 1165.  "The interest asserted [in the case at hand] . . . is essentially a state-law contract right.  It bears little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution." *Ewing*, 474 U.S. at 229–30 (Powell, J. concurring).

Lastly, even if the Court were to find a fundamental right to procedure under the Constitution, this right would be something not currently recognized by the Tenth Circuit or the Supreme Court; accordingly, such a right would not have been clearly established at the time of the alleged unlawful conduct. *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) ("To resolve qualified immunity claims, a court must consider two elements: whether a constitutional violation occurred, and whether the violated right was 'clearly established' at the time of the violation.").  Thus, at a minimum, Defendants are entitled to qualified immunity.  This Court must be mindful of the Supreme Court's admonition in *Collins v. City of Harker Heights*, 503 U.S. 115, 124 (1992) to exercise the "utmost care whenever we are asked to break new ground in this field."  Consequently, the Court is extremely hesitant to extend substantive due process protections to less fundamental property interests and dismisses Plaintiffs' substantive due process claim.

### B.    Count VII: Tortious Interference with Contractual Relations (Valerio)

In response to Plaintiffs' claim for tortious interference with prospective and existing contractual relations, Count VII, Defendant Valerio argues that the claim is barred by the New Mexico Tort Claims Act (NMTCA).  The NMTCA provides that "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived . . . by Sections 41-4-5 through 41-4-12." N.M. STAT. ANN. § 41-4-4(A).  The NMTCA does not provide an exception for the claim of tortious interference with prospective and existing contractual relations. *El Dorado Utils., Inc. v. Eldorado Area Water & Sanitation Dist.*, 109

28

P.3d 305, 311 (N.M. Ct. App. 2005) (holding that a claim for tortious interference with contractual relations against a governmental entity was barred by they NMTCA).  Plaintiffs do not dispute that there is no waiver for their claim in the NMTCA; instead, they argue that Valerio was not acting within the scope of his duties at the time he committed the alleged tort, and therefore, the NMTCA does not apply. (Doc. 37 at 21–22.)

Although Plaintiffs concede that Valerio's position included specific duties authorizing him to review bids and assist with bid awards, they argue that his acts "performed in furtherance of attempting to award the contract to FNF and to prevent Fisher from receiving the award did not occur while Valerio was performing his required actions or duties." (*Id.* at 22.)  Plaintiffs allege numerous acts which they claim were not authorized by New Mexico law:

> (a) Participating in a *de facto* bid protest with FNF.
> (b) Misrepresenting and misleading Fisher NM into agreeing to extend the time for award of the contract.
> (c)Taking affirmative actions to award the contract to another bidder.
> (d) When FHWA refused to agree to reject Fisher NM and award the contract to FNF, rebidding the project for purely pretextual reasons simply to avoid a bid protest or litigation with FNF.
> (e) Acting against the best interests of the State of New Mexico.

(*Id*. at 21.)

New Mexico courts hold that a public employee is acting within the scope of his duty "as long as there is 'a connection between the public employee's actions at the time of the incident and the duties the public employee was requested, required or authorized to perform.' " *Seeds v. Lucero*, 113 P.3d 859, 862 (N.M. Ct. App. 2005) (quoting *Celaya v. Hall*, 85 P.3d 239, 245 (N.M. 2004)). This standard extends beyond officially authorized or requested acts, and is thus broader than a mere "scope of employment" standard.  *Celaya*, 85 P.3d at 245.  Indeed, "a public employee may be within the scope of authorized *duty* even if the employee's *acts* are fraudulent, intentionally

malicious, or even criminal." *Seeds*, 113 P.3d at 862 (emphasis in original) (internal citation omitted). This means that if there is a connection between the public employee's alleged actions and duties, "wrongful motive is simply irrelevant . . . ." *Id*.

New Mexico case law sets a very low bar for finding that a public employee acted within the scope of duty. In *Seeds*, the plaintiffs alleged that the defendant mayor and defendant city attorney conspired with plaintiffs' business rival to harm plaintiffs by selectively enforcing city ordinances and filing groundless criminal charges against plaintiffs. *Id*. at 860–62. The court found that "there was an obvious connection between the City Defendants' authorized duties to enforce the city's ordinances and the allegedly malicious conduct." *Id*. at 862. Even plaintiffs' conspiracy allegation was within the scope of the defendants' duties because its purpose was to harm plaintiffs "by utilizing the machinery of city government," and so in carrying it out "City Defendants were doing nothing more than agreeing to use their authorized duties for malicious reasons." *Id*. The court found for defendants after concluding that they were "generally performing their authorized duties at the time of the actions forming the basis of Plaintiffs' claims." *Id*.

In the case at hand, for Plaintiffs' claim to survive, their factual allegations must establish a plausible argument that Valerio was not acting within the scope of his duties. *Twombly*, 550 U.S. at 556. Plaintiffs have failed to meet this standard. All of Valerio's actions of which Plaintiffs complain were performed in his capacity as Deputy Secretary of NMDOT. As an NMDOT official, Valerio has many duties related to the solicitation, review, award, and rejection of bids. *See* N.M. STAT. ANN. §§ 13-1-103 through 13-1-110. All of Valerio's alleged unlawful acts are connected to these general duties: His communications with FHWA and Jed Billings of FNF, his interactions with Tamara Haas and the bid review committee, the preparation of the proposed letter awarding the contract to FNF, and the letter rejecting all bids were all part of his duties as Deputy Secretary.

30

Valerio may have been abusing his duties or acting maliciously, but this does not change the fact that there was a clear connection between his duties and the alleged unlawful acts. *Seeds*, 113 P.3d at 862.  Accordingly, the Court finds that Valerio was acting within the scope of his duties at the time of the alleged wrongdoing and dismisses Plaintiffs' claim in Count VII of the Complaint for tortious interference with prospective and existing contractual relations as barred by the NMTCA.

## IV.    CONCLUSION

Defendants Girón and Valerio argue that dismissal of Counts VII and IX of the Complaint is appropriate (1) because the § 1983 claim in Count IX for violation of the due process clause is not plausible under *Twombly*, 550 U.S. 544 and is barred by qualified immunity, and (2) because the tortious interference with contractual relations claim in Count VII against Valerio is barred by the New Mexico Tort Claims Act.

With regard to Plaintiffs' § 1983 claims, first, the Court dismisses the § 1983 claim for money damages against Girón and Valerio in their official capacities without prejudice because such suits are barred by the Eleventh Amendment.

Next, the Court dismisses in part Plaintiffs' § 1983 claim for procedural due process against Defendants Girón and Valerio because they were entitled to qualified immunity if they rejected the bid before an award of the contract had occurred.  Under New Mexico law, NMDOT officials have wide discretion to reject bids, and the unlawfulness of Defendants' actions would not have been apparent to a reasonable official in these circumstances.  Nevertheless, Plaintiffs may proceed on a theory that an implied contract existed at the time NMDOT decided to reject all bids and rebid the Project.  If there were words or actions evincing a mutually explicit understanding, then clearly established law entitled Fisher NM to due process before its interest in the contract was taken away. Ultimately, the existence of an implied contract based on the parties' words and actions is a factual

31

issue which should be decided on summary judgment.

Also, the Court dismisses Plaintiffs' substantive due process claim because Fisher NM's alleged property interest in a public works contract does not represent a fundamental property interest protected by the substantive due process clause, and even if the Court were to recognize such a right, it is not clearly established, and qualified immunity applies.

Lastly, with regard to Plaintiffs' claim in Count VII against Valerio for tortious interference with contractual relations, the Court dismisses this claim as barred by the New Mexico Tort Claims Act because the Act does not provide an exception for this tort and Valerio was acting within the scope of his duties as Deputy Secretary of NMDOT.

**WHEREFORE**,

**IT IS HEREBY ORDERED** that Defendants Gary Girón and Max Valerio's Motion to Dismiss (Doc. 17) is **GRANTED IN PART** and **DENIED IN PART**.

_____
**ROBERT BRACK**
**UNITED STATES DISTRICT JUDGE**