IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FISHER SAND & GRAVEL CO.
d/b/a SOUTHWEST ASPHALT PAVING and
FISHER SAND & GRAVEL – NEW MEXICO, INC.,

       Plaintiff,

vs.                                                                       No. 10-cv-0635 RB/SMV

FNF CONSTRUCTION, INC.,
PULICE CONSTRUCTION, INC.,
GARY GIRÓN, individually and as Cabinet Secretary
of the New Mexico Department of Transportation,
MAX VALERIO, individually and as Deputy Secretary
of the New Mexico Department of Transportation,
JED BILLINGS, Chief Executive Officer
of FNF Construction, Inc., and
STEPHEN BASILA, President of Pulice Construction, Inc.,

       Defendants.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO DISMISS NO. 2**

This case arises out of construction bidding processes in New Mexico and Arizona. After submitting bids, Defendant FNF Construction, Inc. ("FNF") and Pulice Construction, Inc. ("Pulice") allegedly contacted government officials in New Mexico and Arizona and provided information about the supposed criminal activities of Plaintiff Fisher Sand & Gravel, Co. ("Fisher"), d/b/a Southwest Asphalt Paving and Fisher Sand & Gravel – New Mexico, Inc., in an effort to exclude Fisher from the construction market. FNF has filed several motions to dismiss, which the Court will address in turn. FNF's second motion argues that Fisher's common law claims are barred by privileges recognized in New Mexico and Arizona. (Doc. 90). Having considered the submissions of counsel, relevant law, and otherwise being fully advised, the Court **DENIES** FNF's Motion to Dismiss No. 2.

**I.      Standard**

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint in whole or in part for failing to state a claim upon which relief is available. To survive a Rule 12(b)(6) motion to dismiss, a complaint must state a claim for relief that plausibly, not merely possibly, entitles the plaintiff to relief under the relevant law. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). In considering a motion to dismiss, the court must look within the four corners of the complaint and accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (citations omitted); *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (citation omitted). However, the court need not accept as true legal conclusions contained in the complaint. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

**II.     Background**

The Court has provided a detailed factual summary in its Memorandum Opinion and Order Denying FNF's Motion to Dismiss No. 1, and that background is incorporated herein by reference. Relevant to the instant motion, this case arises out of the bidding process for two separate road construction projects, one in Arizona (the "Arizona project") and one in New Mexico (the "Las Cruces project"). (*See* Verified Am. Compl., Doc. 81). During the bidding process, FNF and Pulice, competing construction companies, agreed to work together to exclude Fisher from the construction market in Arizona and New Mexico by challenging the company's status as a responsible bidder. To do so, FNF, Pulice, and their Presidents, Jed Billings and Stephen Basila, made statements and submitted documents to the New Mexico Department of Transportation ("NMDOT") and the Arizona Department of Transportation ("ADOT").

Fisher alleges that the statements made by the Defendants violated and contravened the purposes of the Procurement Codes of Arizona and New Mexico. The stated purposes of the New Mexico Procurement Code include providing "for the fair and equitable treatment of all persons involved in public procurement . . ." and ensuring "a procurement system of quality and integrity." N.M. STAT. ANN. § 13-1-29. Similarly, the Arizona Procurement Code serves to increase "public confidence in the procedures followed in public procurement . . ." and to secure "the fair and equitable treatment of all persons who deal with the procurement system . . . ." ARIZ. REV. STAT. ANN. tit. 41, ch. 23, art. 1, § 1. According to Fisher, to effectuate these purposes, both states set out specific procedures that must be followed in a bid protest. (Doc. 103 at 2). The Defendants' statements allegedly violated those procedures. (*See, e.g.*, Compl. at ¶¶ 37-38, 57, 110-112).

In its Motion to Dismiss No. 2, FNF asserts that its communications to NMDOT and ADOT are subject to absolute and conditional privileges under New Mexico and Arizona common law. (Doc. 92). FNF contends that, because of the applicable privileges, all of Fisher's common law claims are barred, including Fisher's Counts I (conspiracy), IV (defamation), VI (injurious falsehood), VII (tortious interference), and VIII (prima facie tort). (Doc. 92 at 2). Fisher, on the other hand, argues that the privileges are inapplicable. (Doc. 103). Even if they are, Fisher asserts, they do not apply here because FNF abused the privileges.

### III. New Mexico Privilege

#### a. Absolute Privilege for Quasi-Judicial Proceedings

FNF contends that its statements are privileged because they were made in connection with and during a competitive bid process, which it argues is quasi-judicial in nature. (Doc. 92 at 3). Alternatively, FNF argues that its statements were made in connection with a bid protest and

are, therefore, privileged. (*Id.*) Fisher argues that because no quasi-judicial process occurred, FNF's statements are not entitled to an absolute privilege. (Doc. 103 at 7).

New Mexico applies an absolute privilege to statements made in connection with a judicial proceeding, which extends to administrative hearings and proceedings that are quasi-judicial in nature.[1] *Helena Chem. Co. v. Uribe*, 281 P.3d 237, 241 (N.M. 2012) (citation omitted); *Gregory Rockhouse Ranch, LLC v. Glenn's Water Well Serv., Inc.*, 191 P.3d 548, 554-55 (N.M. Ct. App. 2008), overruled in irrelevant part by *Helena Chem.*, 281 P.3d at 242 (listing cases). The purpose of the absolute privilege is to protect the integrity of the proceedings by enabling participants to state and support their positions without fear of retaliation. *Lewis v. Elliott*, 628 F. Supp. 512, 516 (D.D.C. 1986) (quotation omitted). The existence of an absolute privilege is a question of law that the court must decide. *Gengler v. Phelps*, 589 P.2d 1056, 1057 (N.M. Ct. App. 1978) (citation omitted).

To qualify as quasi-judicial, the administrative proceeding must be characterized by the "trappings required by due process, e.g., notice, hearing, and opportunity to present witnesses." *Gregory Rockhouse*, 191 P.3d at 555 (quoting *Southworth v. Santa Fe Servs., Inc.*, 963 P.2d 566, 569 (N.M. Ct. App. 1998)). Additionally, for an administrative body to act in a quasi-judicial capacity, it must be investigating facts, or ascertaining the existence of facts, holding hearings, and drawing conclusions from the facts as a basis for its official action, as well as exercising discretion that is judicial in nature. *Southworth*, 963 P.2d at 569 (quoting *Zamora v. Village of Ruidoso Downs*, 907 P.2d 182, 185 (N.M. 1995)). The absolute privilege has been "confined to very few situations where there is an obvious policy in favor of permitting complete freedom of expression, without any inquiry as to the defendant's motives." *Neece v. Kantu*, 507 P.2d 447, 452 (N.M. Ct. App. 1973) (quotation omitted).

---

[1] Fisher does not contest the applicability of New Mexico law. (Doc. 103 at 3).

FNF asserts that the competitive bid process in New Mexico is quasi-judicial, and Fisher does not argue the point because it believes that FNF's statements were not made in the course of the bid process. However, the Court must consider whether New Mexico would deem the competitive bid process quasi-judicial, and it finds that New Mexico courts would not find that NMDOT acts in a quasi-judicial capacity when it accepts and reviews bids.

New Mexico courts have determined that an administrative agency engaged in a review of a permit application is not performing a quasi-judicial function to which the absolute privilege applies. *Gregory Rockhouse*, 191 P.3d 548. However, proceedings involving peer review of alleged professional misconduct and a labor grievance were deemed quasi-judicial, and statements made in the course of such proceedings are absolutely privileged. *Franklin v. Blank*, 525 P.2d 945, 946 (N.M. Ct. App. 1974), superseded by statute as stated in *Leyba v. Renger*, 845 P.2d 780, 781 (N.M. 1992); *Neece*, 507 P.2d at 453-54.

As in *Gregory Rockhouse*, the solicitation of bids by NMDOT does precipitate some kind of administrative activity. However, again like *Gregory Rockhouse* and distinct from *Franklin* and *Neece*, there is no indication that the competitive bidding process in New Mexico constitutes a quasi-judicial proceeding. The bidding process does not require NMDOT to investigate or ascertain facts, draw legal conclusions, or hold hearings and receive testimony from witnesses. Both a labor grievance proceeding and peer review of alleged professional misconduct entail the trappings of due process and the investigation of facts. The competitive bid process decidedly does not. As such, and given the concern of New Mexico courts that absolute privilege be confined to limited situations, *see Neece*, 507 P.2d 452, the Court concludes that statements made in the course of competitive bid processes are not entitled to absolute privilege.

Rather than point to specific features of New Mexico's competitive bidding process, FNF merely contends that other courts have concluded that administrative agencies overseeing competitive bidding processes act in a quasi-judicial capacity. (Doc. 92 at 5, 5 n.3). The cases cited do not, however, demonstrate that New Mexico courts would apply an absolute privilege to FNF's statements to NMDOT, even assuming that they were made in the course of the competitive bidding process. For example, in *DiBerardino's, Inc. v. Rome Consol. Sch. Dist.*, 510 N.Y.S.2d 791 (N.Y. Sup. Ct. 1986), the Court noted that the bidding process has been described as a quasi-judicial function because the award of bids is discretionary, but the subject matter of the case was whether state officials were immune from a suit in damages, not whether defamatory statements were absolutely privileged. *Id.* at 791-92. Similarly, *Koich v. Cvar*, 110 P.2d 964 (Mont. 1941), dealt with whether a bidder could bring a lawsuit against the city council regarding the sufficiency of an investigation into bids. *Id.* at 967. Finally, in *James Cape & Sons, Co. v. Mulcahy*, 700 N.W.2d 243 (Wis. 2005), the court determined that a municipality acts in a quasi-judicial manner when, in the course of the competitive bidding process, a bidder notifies it of a mistake and the municipality is required to consider that claim. *Id.* at 245. No case in any state or federal court has applied an absolute privilege to statements based solely on the fact that the statements were made in the course of the bidding process.

FNF further argues that the absolute privilege applies because its statements were made in contemplation of or constituted a bid protest. FNF asserts that because Fisher characterized its statements as a secret, de facto bid protest, it is judicially estopped from asserting that the statements did not constitute a privileged bid protest. (Doc. 92 at 9). Alternatively, it claims that because it was contemplating a bid protest at the time it made the statements, as demonstrated by the documents attached to Fisher's amended complaint, the statements are privileged. (Doc. 92 at

10). Fisher argues that, even assuming that a bid protest would constitute a quasi-judicial process, FNF's improper communications caused NMDOT to act outside the quasi-judicial process.

FNF states, in conclusory fashion, that bid protests are quasi-judicial proceedings. (Doc. 92 at 8). This may be true. However, no New Mexico court has addressed the issue and determining whether a proceeding is quasi-judicial in nature is a state-specific inquiry that rests heavily on the particular safeguards set by state code. *Compare Astro Res. Corp. v. Ionics, Inc.*, 577 F. Supp. 446, 447-48 (S.D. Tex. 1983) (NASA regulated bid protests are quasi-judicial because of the extensive procedures provided), *with Lockheed Info. Mgmt. Sys. Co., Inc. v. Maximus, Inc.*, 524 S.E.2d 420, 424-25 (Va. 2000) (bid protest not quasi-judicial because state procedure does not provide for notice, hearing, or any other safeguards of a judicial proceeding). By failing to set forth the specific procedures of the bid protest process in New Mexico that render such proceedings quasi-judicial in nature, FNF has failed to demonstrate that statements made in the course of bid protest proceedings are absolutely privileged.

Even if FNF had made the requisite showing, Fisher's complaint plausibly alleges that FNF's statements were not made in the course of or in contemplation of a bid protest. According to Fisher, although FNF's communications were akin to a bid protest, FNF and NMDOT intentionally circumvented the bid protest process and the attendant trappings of due process. (*See* Compl. at ¶¶ 110-12). At the very least, FNF's arguments supporting its claim that the communications were made in the course of bid protest proceedings require factual determinations that the Court cannot make at this early stage. Given the facts plausibly alleged by Fisher, the Court cannot conclude that FNF's communications were made in the course of or in contemplation of a bid protest.

Finally, FNF contends that the republication of the Arizona bid protest and related documents are absolutely privileged. New Mexico recognizes that "republishing, repeating or explaining a complaint that has been filed *in good faith* should be absolutely privileged . . . ." *Helena Chem.*, 281 P.3d at 246 (emphasis added). However, assuming this privilege could be applicable to the republication of a bid protest and related documents, it does not apply here. Taking the facts as Fisher has alleged, the Arizona bid protest was not filed in good faith. Consequently, its republication is not privileged.

### b. Qualified Privilege

New Mexico courts have applied the qualified privilege recognized by the RESTATEMENT (SECOND) OF TORTS § 598 "to communications that are made to individuals or entities who may act in the public interest . . . ." *Gregory Rockhouse*, 191 P.3d at 555-56. To determine whether qualified privilege applies, the Court must evaluate "the surrounding circumstances to determine whether they could be said to have induced a correct or reasonable belief that the communicated information affected substantial public or private interests." *Id.* at 556. The Court must also consider "the audience and the apparent utility of the communications." *Id.* If the communications affected substantial interests and were made to the appropriate audience, then they are conditionally privileged. *Id.* at 557. However, the applicability of qualified privilege and whether that privilege has been forfeited by abuse is generally considered a jury question that depends on factual determinations. *Brown v. Skaggs-Albertson's Props., Inc.*, 563 F.2d 983, 987-88 (10th Cir. 1977).

Fisher contends that FNF's claim fails at both prongs. First, it asserts that FNF acted in opposition to the public interest by communicating with NMDOT outside the process set out in the Procurement Code. (Doc. 103 at 13-15). At the second prong, it argues that the claim fails

because the initial communication by FNF was made to the incorrect person in the incorrect form and otherwise failed to satisfy the requirements for a bid protest. (*Id.* at 15-17)).

The Court cannot conclude as a matter of law that a conditional privilege applies. It is clear that the applicability of this privilege would require the Court to look outside the pleadings and the attachments thereto. For example, the Court would be required to determine the duties of the officers to whom the communications were made. *See* RESTATEMENT (SECOND) OF TORTS § 598 cmt. e. That information is not before the Court, and it is not appropriate for the Court to make such determinations at this stage.

Even if the Court could determine whether a conditional privilege applies, conditional privileges may be lost if they are abused. *Gregory Rockhouse*, 191 P.3d at 557 (citing *Baker v. Bhajan*, 871 P.2d 374, 379 (N.M. 1994)).

> Abuse of privilege arises out of the publisher's lack of belief, or reasonable grounds for belief, in the truth of the alleged defamation; by the publication of the material for an improper use; by the publication to a person not reasonably necessary for the accomplishment of the purpose; or by publication not reasonably necessary to accomplish the purpose.

*Id.* (quotation and alteration omitted). Whether or not a qualified privilege has been abused is typically a question reserved for the jury. *Id.* (citing *Stewart v. Ging*, 327 P.2d 333, 336 (N.M. 1958)).

In the instant case, Fisher has alleged sufficient plausible facts to establish that FNF abused the privilege. Specifically, Fisher alleges that the defamation was untrue and was made maliciously with no investigation of the truth and no reasonable grounds to believe that the statements were true. Moreover, Fisher alleges that the statements were made for an improper purpose, namely to exclude it from the construction markets in two states. These allegations suffice to withstand FNF's motion to dismiss.

Because the Court finds that neither absolute nor conditional privilege is applicable at this time, it need not consider FNF's contention that privilege bars all of Fisher's common law claims.

### IV.     Arizona Privilege

Fisher also bases its common law claims on statements that FNF made to Arizona officials. Arizona has expressly refused to apply absolute privilege to administrative proceedings, opting instead to permit a conditional or qualified privilege in such proceedings. *Melton v. Slonskly*, 504 P.2d 1288, 1290-91 (Ariz. Ct. App. 1973). The Court recognizes that some Arizona courts have stated that an absolute privilege applies to "judicial proceedings, legislative proceedings and administrative or executive functions of the government." *See Bailey v. Superior Court*, 636 P.2d 144, 146 (Ariz. Ct. App. 1981) (citation omitted). The inclusion of administrative functions in this list appears at odds with the holding in *Melton*, and at least one Arizona court has noted the conflict. *Lewis v. Oliver*, 873 P.2d 668, 673 (Ariz. Ct. App. 1993). In *Lewis*, the court dismissed the mention of administrative functions as dictum, *id.*, and this Court must do the same. It is clearly established in Arizona that absolute privilege does not apply to administrative proceedings. *See Burns v. Davis*, 993 P.2d 1119, 1124-25 (Ariz. Ct. App. 1999).

Like New Mexico, Arizona applies the qualified privilege set forth in the RESTATEMENT (SECOND) OF TORTS § 598. *Lewis*, 873 P.2d at 673. Thus, communications to persons who may act in the public interest will be conditionally privileged if the communication relates to an important public interest and is made to someone authorized to take action. *Id.* (quotation omitted). Moreover, just as in New Mexico, qualified privilege can be forfeited by abuse. *Burns*, 993 P.2d at 1127-28 (citations omitted).

FNF asserts that Pulice's bid protest would be absolutely privileged, because a bid protest is quasi-judicial in nature. (Doc. 92 at 19-20). However, that position is clearly contradicted by the law of Arizona, which has rejected the application of absolute privilege to administrative proceedings. The bid protest would be, at most, entitled to a conditional privilege. FNF argues that an additional statement, made by Billings to ADOT Engineer Roehrich, would be conditionally privileged because it occurred in a private meeting with a government official. (Doc. 92 at 20).

As described above, the conditional privilege can be forfeited by abuse of the privilege. In Arizona, abuse of the privilege may be shown if the defendant includes irrelevant defamatory matter that does not bear on the matter under consideration, if the defendant publicizes the matter to any person other than is necessary or useful to further the public interest, or if the publication is not made primarily to further the public interest. *Burns*, 993 P.2d at 1128 (quoting *Melton*, 504 P.2d at 1291). Despite FNF's arguments to the contrary, Fisher's complaint clearly and sufficiently alleges that the communications were not made for the primary purpose of furthering the public interest and, at least in regard to Billings' comment to Roehrich, was neither relevant to the matter under consideration nor made to the appropriate person. Again, a 12(b)(6) motion is an inappropriate vehicle to raise questions requiring factual determinations, and the Court denies FNF's request to find that a qualified privilege applies as a matter of law.

**THEREFORE,**

**IT IS ORDERED** that FNF's Motion to Dismiss No. 2, filed July 2, 2012 (Doc. 90), is **DENIED**.

_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE