## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

FISHER SAND & GRAVEL CO.
d/b/a SOUTHWEST ASPHALT PAVING and
FISHER SAND & GRAVEL – NEW MEXICO, INC.,

      Plaintiff,

vs.                                                                               No. 10-cv-0635 RB/SMV

FNF CONSTRUCTION, INC.,
PULICE CONSTRUCTION, INC.,
GARY GIRÓN, individually and as Cabinet Secretary
of the New Mexico Department of Transportation,
MAX VALERIO, individually and as Deputy Secretary
of the New Mexico Department of Transportation,
JED BILLINGS, Chief Executive Officer
of FNF Construction, Inc., and
STEPHEN BASILA, President of Pulice Construction, Inc.,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION TO DISMISS COUNTERCLAIM

This case arises out of a dispute between competitors in the construction business. Plaintiff Fisher Sand & Gravel, Co. ("Fisher"), d/b/a Southwest Asphalt Paving and Fisher Sand & Gravel – New Mexico, Inc., brought this lawsuit against FNF Construction, Inc. ("FNF"), Pulice Construction, Inc., their respective Presidents, and officials with the New Mexico Department of Transportation. FNF filed counterclaims against Fisher alleging that Fisher was unjustly enriched and committed tortious interference with contract when it was awarded various contracts for construction projects in Arizona. On September 28, 2012, Fisher filed a motion to dismiss the counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). (Doc. 119). Having considered the submissions of counsel, relevant law, and being otherwise fully advised, the Court grants Fisher's Motion to Dismiss Counterclaim.

## I. Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint in whole or in part for failing to state a claim upon which relief is available. To survive a Rule 12(b)(6) motion to dismiss, a complaint must state a claim for relief that plausibly, not merely possibly, entitles the plaintiff to relief under the relevant law. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). In considering a motion to dismiss, the court must look within the four corners of the complaint and accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (citations omitted); *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (citation omitted). However, the court need not accept legal conclusions contained in the complaint as true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## II. Background

The following factual summary is drawn from the facts as pleaded by FNF. In 2006, Fisher installed an asphalt plant on South 28th Street in Phoenix, Arizona for the purpose of producing asphaltic concrete for use in road construction. (Counterclaim, Doc. 86, at ¶ 7). Such a plant is required to obtain a permit and/or zoning approval from the City in order to operate. (Counterclaim ¶ 8). Fisher obtained neither the proper permit nor zoning approval for the construction and operation of the 28th Street Plant. (*Id.*)

On November 18, 2005, the Arizona Department of Transportation ("ADOT") opened a bid for a project involving road construction in Maricopa County (referred to in the Counterclaim and herein as the "2005 Project"). (Counterclaim ¶¶ 9, 14). Both Fisher and FNF submitted bids on the project. (Counterclaim ¶ 11). Fisher was the low bidder and FNF was the second lowest

bidder, with a difference between the two bids of $298,300. (Counterclaim ¶¶ 15-16). The difference between the two bids is entirely explained by the prices bid on asphalt-related items, with Fisher bidding $346,320 less than FNF on these items. (Counterclaim ¶¶ 15-17). Fisher's pricing for asphalt-related items was premised on the use of its 28th Street Plant. (Counterclaim ¶ 18). ADOT awarded the 2005 Project to Fisher. (Counterclaim ¶ 20).

On March 16, 2007, ADOT opened bids for two projects involving road construction in Maricopa and Pinal Counties (referred to in the Counterclaim and herein as the "2006 Projects"). (Counterclaim ¶¶ 22-23, 28). Both Fisher and FNF submitted bids on the projects. (Counterclaim ¶ 25). Fisher was the low bidder and FNF was the second lowest bidder, with a difference between the two bids of $319,806. (Counterclaim ¶¶ 29-30). Again, the entirety of the difference between the two bids related to the prices bid by FNF and Fisher on asphalt-related items, with Fisher bidding $598,540 less than FNF on these items. (Counterclaim ¶¶ 29-31). As with the 2005 Project bid, Fisher's price for asphalt-related items depended on the use of its 28th Street Plant. (Counterclaim ¶ 32). ADOT awarded the 2006 Projects to Fisher. (Counterclaim ¶ 34).

The ADOT bid proposals required Fisher to certify that it complied with the Standard Specifications, including that it complied with all laws, ordinances and regulations and procured all necessary permits and licenses. (Counterclaim ¶¶ 12-13, 26-27). Despite Fisher's certifications, subsequent legal proceedings related to the 28th Street Plant found that the Plant lacked the proper permits and/or zoning. (Counterclaim ¶¶ 36-41). Specifically, FNF claims that it learned that Fisher had received multiple citations and a $150,000 fine for air quality violations through a report by a Phoenix television station on June 3, 2009. (Counterclaim ¶¶ 36-37). Additionally, FNF alleges that it learned of the court proceedings via a July 28, 2009 article published in *The Arizona Republic*, which indicated that a Phoenix municipal judge had ruled in

April of 2009 that Fisher did not have a permit to build the 28th Street Plant. (Counterclaim ¶¶ 38-39). Two additional articles describing problems with the 28th Street Plant were published in *The Arizona Republic* in 2009 and 2010. (Counterclaim ¶¶ 40-41).

Fisher filed the instant action in this Court on July 6, 2010. FNF filed its counterclaim on July 2, 2012, alleging that Fisher's operation of the 28th Street Plant without proper permits gave Fisher an unfair advantage over other bidders using proper asphalt sources, that Fisher would not have been able to submit its low bids on the 2005 and 2006 Projects without the benefit of its 28th Street Plant, and that Fisher would not have been a qualified bidder had it disclosed that the 28th Street Plant lacked the proper permits and zoning. (Counterclaim ¶¶ 42-43). FNF's counterclaims include unjust enrichment and tortious interference with prospective contract. (Counterclaim ¶¶ 44-54). FNF requests relief in the form of compensatory damages, punitive damages, pre-judgment interest, post-judgment interest, special damages and attorneys' fees.

Fisher asks the Court to dismiss both of FNF's counterclaims, mustering several arguments in support. (Doc. 121). First, Fisher contends that FNF's counterclaims are barred by the statute of limitations. (*Id.* at 7-11; Doc. 198; Doc. 201). Next, Fisher argues that FNF fails to state a claim for both unjust enrichment and tortious interference. (Doc. 121 at 12-15). Fisher further asserts that FNF's claims should be dismissed because they are barred by the doctrine of laches. (*Id.* at 15-16). Finally, Fisher suggests that FNF lacks standing to bring its counterclaims. (*Id.* at 16-19). FNF opposes the motion in its entirety. (Doc. 141).

**III.   Choice of Law**

A federal court sitting in diversity applies the choice-of-law rules of the forum state in which it sits. *See Mem'l Hosp. of Laramie Cnty. v. Healthcare Realty Trust Inc.*, 509 F.3d 1225, 1229 (10th Cir. 2007). The Court, therefore, applies New Mexico choice-of-law principles to

Fisher's counterclaim. In New Mexico, the doctrine of *lex loci delicti commissi* controls as to tort claims, and the court applies the substantive law of the state in which the wrong took place. *Terrazas v. Garland & Loman, Inc.*, 142 P.3d 374, 377 (N.M. Ct. App. 2006). As to unjust enrichment claims, New Mexico courts have applied the law of the state in which the operative events took place unless public policy requires the application of New Mexico law. *Church v. Church*, 630 P.2d 1243, 1247 (N.M. Ct. App. 1981). In the instant matter, the alleged wrong and all operative events occurred in Arizona, so the Court will apply Arizona law to Fisher's substantive claims. Statutes of limitation, on the other hand, are viewed as procedural matters for choice-of-law purposes. *Nez v. Forney*, 783 P.2d 471, 472 (N.M. 1989) (citing *Sierra Life Ins. Co. v. First Nat'l Life Ins. Co.*, 512 P.2d 1245 (N.M. 1973)). The law of the forum governs matters of procedure. *Id.* (citation omitted). Accordingly, New Mexico law controls procedural matters, including the applicable statute of limitations.

### IV. Failure to State a Claim

#### a. Unjust Enrichment

"Unjust enrichment occurs whenever a person has and retains money or benefits which in justice and equity belong to another." *City of Sierra Vista v. Cochise Enters.*, 697 P.2d 1125, 1131 (Ariz. 1984). To state a claim for unjust enrichment, Arizona law requires a party to demonstrate: "(1) an enrichment, (2) an impoverishment, (3) a connection between the two, (4) the absence of justification for the enrichment and impoverishment and (5) the absence of any remedy at law." *Mousa v. Saba*, 218 P.3d 1038, 1045 (Ariz. Ct. App. 2009) (citing *Cmty. Guardian Bank v. Hamlin*, 898 P.2d 1005, 1008 (Ariz. Ct. App. 1995)). Thus, the plaintiff must show "that the defendant received a benefit, that by receipt of that benefit the defendant was unjustly enriched at the plaintiff's expense, and that the circumstances were such that in good

5

conscience the defendant should provide compensation." *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011) (citing *Murdock-Bryant Constr., Inc. v. Pearson*, 703 P.2d 1197, 1202 (Ariz. 1985)). It is a flexible remedy, available when equity demands compensation for a benefit received even though the benefitted party committed no tort and is not contractually obligated to pay. *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 283 P.3d 45, 49 (Ariz. Ct. App. 2012).

FNF's claim against Fisher based on ADOT's award of the contracts for the 2005 and 2006 Projects stretches the unjust enrichment doctrine beyond recognition. Unjust enrichment exists to provide a remedy where the plaintiff provided some service and the defendant retained the benefit from that service without compensation. Thus, FNF's claim for unjust enrichment must fail because FNF did not confer any sort of benefit on Fisher that Fisher unjustly retained. Taken in the light most favorable to FNF, the benefit received by Fisher was the award of three project contracts by ADOT. Fisher fully completed the projects, thereby performing its obligations. As such, it is not unjust for Fisher to retain the money paid by ADOT for the work it completed. Additionally, the alleged impoverishment to FNF is the loss of a potential contract. Unjust enrichment is not designed to compensate a party for an ethereal possibility or expectancy; it is designed to provide a remedy for an actual impoverishment.

FNF's contention that its allegations satisfy the elements required under Arizona law ignores the broader picture of the unjust enrichment doctrine, as described above. FNF has also pointed to one Arizona case that allowed a losing bidder to bring a claim for unjust enrichment against a winning bidder. (Doc. 141 at 13-14). *American Traffic Solutions, Inc. v. Redflex Traffic Systems, Inc.*, No. CV-08-02051, 2010 WL 1640975 (D. Ariz. Apr. 22, 2010), is an unpublished decision in a lawsuit between competitors for government contracts in which the primary claims involved Lanham Act violations. However, the plaintiff also raised claims for tortious

interference and unjust enrichment. *Id.* at *2. The defendant moved for summary judgment on all claims and, after discussing the Lanham Act claims at length, the court noted that "[n]either party gives more than cursory treatment to plaintiff's tortious interference and unjust enrichment claims." *Id.* at *7. The court did not discuss the substance of the claims or explain the allegations that satisfied the elements of the claims. *See id.* While the court did allow the unjust enrichment and tortious interference claims to proceed, it can hardly be argued that the court considered their merits.

Other cases cited by FNF are distinguishable. First, the Court notes that almost all of the cited cases involve an allegation of affirmative fraud whereby the prevailing bidder falsely represented itself as a small business in order to obtain a government contract set aside for small businesses pursuant to the Small Business Act. *Iconco v. Jensen Constr. Co.*, 622 F.2d 1291 (8th Cir. 1980); *Integrity Mgmt. Int'l, Inc. v. Tombs & Sons, Inc.*, No. 83-4231-O, 1988 U.S. Dist. LEXIS 7162 (D. Kan. June 20, 1988); *Bradney v. GR Sys. N.*, No. 86-4022, 1986 U.S. Dist. LEXIS 17634 (E.D. Pa. Nov. 17, 1986); *Fordice Constr. Co. v. Cent. States Dredging Co.*, 631 F. Supp. 1536 (S.D. Miss. 1986). That type of fraud is far different from the alleged misrepresentation by FNF, which relates to the permitting of the plant from which it obtained asphalt.

The court in *Iconco* affirmed a jury verdict awarding damages on an unjust enrichment claim against a competitor who fraudulently represented his small business status under Iowa law, which allows for claims of unjust enrichment where "a defendant has received money which in equity and good conscience belongs to plaintiff." 622 F.2d at 1302 (citation omitted); *see also Bradney*, 1986 U.S. Dist. LEXIS 17634 at *15-16 ("We note the simplicity of the rule echoed by the Pennsylvania unjust-enrichment cases."). Unlike the simplicity of unjust enrichment claims

in Iowa and Pennsylvania, Arizona's requirements to state a claim for unjust enrichment are more stringent. Simply alleging that the defendant received money that should belong to the plaintiff is not sufficient. In *FDIC v. Wabick*, No. 01 C 8674, 2004 U.S. Dist. LEXIS 18068 (N.D. Ill. Sept. 8, 2004), there was a contract between the plaintiff and the defendant, and the court allowed the unjust enrichment claim to proceed as an alternative theory of recovery. *Id.* at *18-20. In the instant case, there is no contractual or quasi-contractual relationship between the parties.

One of the cited cases is not as readily distinguished, but the Court nevertheless finds it unpersuasive. The plaintiff in *Tombs & Sons*, the second-lowest bidder on a contract, sought to recover from the winning bidder because it falsely represented that it was a small business. 1988 U.S. Dist. LEXIS 7162. The court explained that one element of an unjust enrichment claim in Kansas requires the plaintiff to prove that it conferred a benefit on the defendant. *Id.* at *9 (citations omitted). Though the court recognized that the plaintiff did not and could not satisfy that element, it nevertheless entered summary judgment in favor of the plaintiff as to the unjust enrichment claim, stating, "[E]ven though [Plaintiff] conferred nothing of benefit on [Defendant], [Defendant] was awarded the contract which in good conscience should have been awarded [Plaintiff], the lowest bidder that was actually a small business. Thus, [Plaintiff] should recover damages from [Defendant] under the theory of unjust enrichment." *Id.* at *11. The court expressly disregarded the controlling precedent within the forum state to reach its decision. Additionally, the decision is unpublished and has never been cited by another court. Accordingly, the Court finds this decision unpersuasive.

Because FNF has not alleged that it was actually impoverished by Fisher's actions, that Fisher was enriched (given that it completed the projects), or that it conferred a benefit on Fisher

8

that was unjustly retained, the Court concludes that FNF fails to state a claim for unjust enrichment under Arizona law. This claim shall be dismissed.

### b. Interference with Prospective Contract

To establish a prima facie case of intentional interference with a business expectancy in Arizona, a plaintiff must prove that: (1) a valid contractual relationship or business expectancy existed; (2) defendant knew of the relationship or expectancy; (3) defendant intentionally acted in a way that induced or caused a breach or termination of the relationship or expectancy; and (4) the plaintiff suffered resulting damage. *Hill v. Peterson*, 35 P.3d 417, 420 (Ariz. Ct. App. 2001). Additionally, "the interference must be improper as to motive or means before liability will attach." *Neonatology Assocs., Ltd. v. Phoenix Perinatal Assocs. Inc.*, 164 P.3d 691, 693 (Ariz. Ct. App. 2007) (quotation omitted).

Fisher contends that FNF's counterclaim fails to allege that it would have been awarded the contracts for the 2005 Project or the 2006 Projects but for Fisher's bids, particularly given that the Standard Specifications allowed ADOT to cancel the contract or reject all bids. (Doc. 121). Fisher further posits that, because the bids were sealed, no facts exist to demonstrate that Fisher had knowledge of FNF's bids when they were submitted. (*Id.*) Finally, Fisher asserts that the claim fails because FNF has not alleged facts in support of its conclusory allegation that Fisher's conduct was intentional. (*Id.*) FNF counters that it sufficiently pled each of the disputed elements. (Doc. 141 at 17-18). The Court, however, does not agree.

FNF's counterclaim for tortious interference with a contract entirely fails to allege that Fisher knew of FNF's contractual relationship or business expectancy. In arguing that this element is alleged, FNF points to the following allegation in its counterclaim:

> Fisher interfered with FNF's the [sic] business relationship or prospective business relationship with ADOT for the 2005 Phoenix Project and 2006 Phoenix

> Projects by failing to disclose its illegal use of the of the 28th Street Plant and by falsely certifying that it had complied with the Standard Specifications as required for the bids. Had such information been known or disclosed, Fisher would not have been awarded the contracts for the 2005 Phoenix Project and 2006 Phoenix Projects and in all probability contracts for those projects would have been awarded to FNF.

(Counterclaim ¶ 50). This paragraph includes no allegation that Fisher was aware of any contractual relationship between FNF and ADOT or any expectancy held by FNF regarding the award of the project contracts. The counterclaim includes no factual allegation suggesting that Fisher was even aware of FNF's bids on the 2005 Project or the 2006 Projects. Indeed, ADOT's Standard Specifications require that bids be sealed upon submission and not be opened or read until a public reading on the date set in the advertisement for bids. ADOT Standard Specification §§ 102.11, 102.15.

The cases cited by FNF do not cure its failure to allege the knowledge element of its tortious interference claim. For the reasons explained above, the Court does not find the decision in *American Traffic Solutions* persuasive. *See* 2010 WL 1640975. Similarly unpersuasive is the unpublished decision in *McClure Enterprises v. General Insurance Company of America*, No. CV 05-3491, 2009 U.S. Dist. LEXIS 4131 (D. Ariz. Jan. 8, 2009). At issue in that case was a legal malpractice claim brought by a party to a settled lawsuit against the attorney who had previously represented it. *Id.* at *3-4. One element of attorney malpractice requires the court to consider the validity of the underlying claims, so the court addressed the validity of the party's underlying claim for intentional interference with a business expectancy against a competitor who allegedly committed fraud in submitting a bid on a towing contract. *Id.* at *1-2, 12-14. The attorney argued that all underlying claims were invalid because they required proof of proximate causation, which the party could not demonstrate; he did not contest any of the specific elements of a claim for intentional interference with a business expectancy. *See id.* at *11. The court

explained the elements of a prima facie case of intentional interference with a business expectancy, reviewed the allegations, and stated that the party "alleged sufficient facts for an intentional interference with a business expectancy claim." *Id.* at *12-14. The knowledge element was not addressed. Because this decision is unpublished, no argument was presented regarding the elements of tortious interference, and the viability of the claim for intentional interference with business expectancy was not the ultimate issue before the court, the Court concludes that *McClure* is inapplicable.

The gist of a tortious interference claim is that the defendant committed some act that unjustifiably interfered with the plaintiff's contract rights, of which the defendant had knowledge. *See Snow v. W. Sav. & Loan Ass'n*, 730 P.2d 204, 211 (Ariz. 1986) ("The tort is intentional in the sense that [the defendant] must have intended to interfere with the [plaintiffs'] contract or have known that this result was substantially certain to be produced by its conduct."). Absent some allegation that Fisher knew that FNF placed a bid or was the second lowest bidder on the projects, FNF cannot demonstrate that Fisher tortiously interfered with its contractual rights or expectancy interests.

## V.     Additional Arguments

As the Court has determined that FNF's counterclaims fail to state a claim under Federal Rule of Civil Procedure 12(b)(6) as a matter of law, the Court need not reach Fisher's additional arguments that FNF's claims are barred by the statute of limitations and the doctrine of laches, nor that FNF lacks standing to bring its claims.

**THEREFORE,**

    **IT IS ORDERED** that Fisher's Motion to Dismiss Counterclaim, filed September 28, 2012 (Doc. 119), is **GRANTED**. FNF's counterclaims are dismissed with prejudice.

                                          **ROBERT C. BRACK**
                                          **UNITED STATES DISTRICT JUDGE**