IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FISHER SAND & GRAVEL CO.
d/b/a SOUTHWEST ASPHALT PAVING and
FISHER SAND & GRAVEL – NEW MEXICO, INC.,

      Plaintiff,

vs.                                                  No. 10-cv-0635 RB/SMV

FNF CONSTRUCTION, INC.,
PULICE CONSTRUCTION, INC.,
GARY GIRÓN, individually and as Cabinet Secretary
of the New Mexico Department of Transportation,
MAX VALERIO, individually and as Deputy Secretary
of the New Mexico Department of Transportation,
JED BILLINGS, Chief Executive Officer
of FNF Construction, Inc., and
STEPHEN BASILA, President of Pulice Construction, Inc.,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Pulice Construction, Inc.'s and Stephen Basila's (Pulice's) Motion for Summary Judgment on Count II and Partial Summary Judgment on Count V (Doc. 485), FNF Construction Inc.'s (FNF's) Motion to Exclude Affidavit and Testimony of Scotty C. Rand (Doc. 590), in which Pulice joins (Doc. 645), and Pulice's Motion to Strike the Affidavit of Scotty C. Rand (Doc. 624), in which FNF joins (Doc. 674). Fisher Sand & Gravel, Co. (FSG) d/b/a Southwest Asphalt Paving and Fisher Sand & Gravel - New Mexico, Inc. (collectively "Plaintiffs") oppose these motions. Jurisdiction arises under 28 U.S.C. § 1331. Having considered the submissions of counsel and relevant law, the Court **DENIES** these motions.

**I.  Background**

FSG, FNF, and Pulice are competitors in the bidding process for state road construction projects in Arizona and New Mexico. Jed Billings is the Chief Executive Officer of FNF, and Steve Basila is the President of Pulice. After the federal government indicted FSG and three of its former officers for tax fraud, FSG entered into a Deferred Prosecution Agreement ("DPA") in May 2009. Shortly thereafter, according to Plaintiffs, Pulice and FNF utilized FSG's legal problems in a bad faith effort to defame Plaintiffs' business reputation and convince state authorities in Arizona and New Mexico to refrain from awarding state road construction contracts to Plaintiffs'.

On July 6, 2010, Plaintiffs filed suit against Defendants. (Doc. 1). In the Amended Complaint Plaintiffs allege claims for civil conspiracy (Count I), defamation (Counts II-IV), injurious falsehood (Counts V-VI), tortious interference with prospective contractual relations (Count VII), prima facie tort (Count VIII), violation of 42 U.S.C. § 1983 (Count IX), violation of the Racketeer Influenced Corrupt Organization Act (RICO) (Count X), and violation of the New Mexico Unfair Practices Act (UFA) (Count XI). (Doc. 81). The Court dismissed the Section 1983 and UPA claims as well as some of the defamation, injurious falsehood, and tortious interference claims (Counts III and IX and portions of Counts IV, VI, and VII).

Pulice moves for summary judgment on Counts II and V. Count II is a defamation claim against all Defendants and alleges that on July 15, 2009 Basila, as President of Pulice, and Billings, as CEO of FNF, stated to Arizona Department of Transportation ("ADOT") State Engineer Floyd Roehrich that FSG was financially insolvent. (Doc. 81 ¶ 178). Count V is an injurious falsehood claim against all Defendants and alleges, inter alia, that on July 15, 2009 Pulice, through Basila, and FNF, through Billings, asserted to Roehrich that FSG was financially

insolvent. (Doc. 81 ¶¶ 217, 218). Pulice contends that discovery proves that no such communication took place on July 15, 2009 or any other time. Plaintiffs respond that issues of material fact preclude summary judgment.

## II.     Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In cases where the moving party will not bear the burden of persuasion at trial, it bears the initial responsibility of identifying an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "If the movant meets this initial burden, the burden then shifts to the nonmovant to 'set forth specific facts' from which a rational trier of fact could find for the nonmovant." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007). When applying this standard, the court examines the record, makes all reasonable inferences, and views the facts in the light most favorable to the non-moving party. *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 34 (10th Cir. 2013).

## III.    Facts

Roehrich testified in his deposition that he did not meet with Basila and Billings on July 15, 2009. (Doc. 485-1, Roehrich Deposition at 73). He also testified that neither Billings nor Basila ever called him to make defamatory statements about FSG. (*Id.*) Roehrich acknowledged that ADOT requested proof of FSG's financial soundness, but Roehrich did not ask for it and had no knowledge of anyone else at ADOT asking for it. (Roehrich Dep. at 74). Roehrich testified in his deposition that he did not telephone Tommy Fisher, the President of FSG, and tell him that Billings told him that FSG was financially insolvent and needed to present evidence of financial responsibility to ADOT. (*Id.*) Roehrich testified that Basila and Billings never conversed with

him about the financial stability of FSG. (Roehrich Dep. at 76). Roehrich acknowledged that his memory is "not as . . . good as it should have been" and he has the "reputation" of having to be told something twice in order to remember it. (Roehrich Dep. at 128, 184).

Basila testified in his deposition that he never participated in a telephone conference call with Billings, Kevin Harris, and Roehrich and he never told Roehrich that FSG was financially unstable. (Doc. 485-2, Basila Deposition at 231-232). Billings testified in his deposition that he never spoke to Roehrich about FSG's financial stability or bonding capacity and he did not speak with Roehrich about FSG from June 2009 through the end of July 2009. (Doc. 485-3, Billings Deposition at 237).

Scotty Rand is a former FNF employee who now works for FSG. (Doc. 590-8, Rand Affidavit ¶ 1). Rand stated in his affidavit that on or about July 15, 2009, he was present for a conference call with Billings, Basila, Roehrich, and Kevin Harris. (Rand Affidavit ¶ 8). According to Rand, Billings and Basila specifically stated to Roehrich that FSG was "turning back jobs" to its bonding company because FSG did not possess the financial wherewithal to perform on such projects. (Rand Affidavit ¶ 14). Additionally, Rand claims that during the call, Billings and Basila each stated that Roehrich should be concerned about awarding FSG any jobs from ADOT. (*Id.*) Rand testified in his deposition that the conversation may have occurred on a date other than July 15, 2009, but he was certain that the conversation occurred and he overheard some of it. (Doc. 661-7, Rand Deposition at 121-122).

Tommy Fisher testified in his deposition that Roehrich called Tommy Fisher and stated that Billings and Basila had called Roehrich and told Roehrich that FSG was financially insolvent and turning back jobs to its bonding company. (Doc. 626-3, Fisher Deposition at 111). Tommy Fisher agreed to submit FSG's most recent financial statement to refute this assertion.

4

(*Id*.) Tommy Fisher called Josh Loftis, FSG's insurance broker and requested a bonding letter. (Fisher Dep. at 43; 112). The bonding company submitted a bond letter to ADOT the following day. (Fisher Dep. at 200).

## IV. Discussion

The existence of a defamatory communication is an essential element of a defamation claim under both Arizona and New Mexico law. *See Dube v. Likins*, 167 P.3d 93, 104 (Ariz. App. 2007) (elements of a defamation claim under Arizona law); *Cory v. Allstate Ins.*, 583 F.3d 1240, 1243 (10th Cir. 2009) (elements of a defamation claim under New Mexico law). Similarly, in order to establish a claim for injurious falsehood in Arizona or New Mexico, Plaintiffs must show that Defendants published false information. *Aldabbagh v. Ariz. Dep't of Liquor Licenses and Control,* 783 P.2d 1207, 1213 (Ariz. Ct. App. 1989) (discussing an injurious falsehood claim under Arizona law); *Western Tech., Inc. v. Sverdrup & Parcel, Inc.*, 739 P.2d 1318, 1321 (Ariz. Ct. App. 1986) (same); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 892 (10th Cir. 1991) (discussing an injurious falsehood claim under New Mexico law). Simply stated, Plaintiffs must prove that the statement occurred in order to recover damages for the statement at trial.

The question of whether the statement occurred is a genuine issue of material fact that precludes summary judgment. Defendants presented evidence from which a reasonable fact-finder could conclude that the statement did not occur. Plaintiffs presented evidence from which a reasonable fact-finder could conclude that the statement did occur. Specifically, Rand testified in his deposition that he was present at the start of the statement and overheard parts of it. Moreover, Rand's affidavit and testimony are consistent with Tommy Fisher's deposition testimony that Roehrich called him and requested proof of FSG's financial stability because Billings and Basila had questioned it. This testimony is corroborated by the fact that FSG asked

5

its bonding company to submit a bonding letter to ADOT. For these reasons, the Rand affidavit is not the only evidence that would allow a reasonable jury to find that the statement occurred.

Moreover, Defendants' attempt to strike Rand's affidavit and testimony is unavailing. Plaintiffs timely disclosed Rand as a potential witness in March 2013. In addition, after Plaintiffs presented his affidavit to Defendants, Defendants deposed Rand for a full day. It bears underscoring that Rand's affidavit does not qualify as a "sham affidavit" because it does not contradict prior sworn testimony. *Hernandez v. Valley View Hosp. Ass'n,* 684 F.3d 950, 956 n. 3 (10th Cir. 2012) (rejecting the argument that affidavits should have been disregarded as sham affidavits because, to be disregarded as such, "an affidavit must contradict prior sworn statements"). Any discrepancies between Rand's affidavit and his subsequent deposition testimony do not rise to the level of a sham affidavit. Notably, Defendants may highlight any inconsistencies in Rand's testimony on cross-examination at trial. The weighing of evidence, the reconciliation of inconsistent testimony, and the assessment of a witness' credibility is solely within the province of the jury. *Allen v. Wal-Mart Stores, Inc.*, 241 F.3d 1293, 1297 (10th Cir. 2001). Viewing all the evidence in the light most favorable to Plaintiffs, this Court concludes that a jury could reasonably infer from the evidence that the statement occurred.

**THEREFORE, IT IS ORDERED** that Pulice's Motion for Summary Judgment on Count II and Partial Summary Judgment on Count V (Doc. 485), FNF's Motion to Exclude Affidavit and Testimony of Scotty C. Rand (Doc. 590), and Pulice's Motion to Strike the Affidavit of Scotty C. Rand (Doc. 624), are **DENIED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**