IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FISHER SAND & GRAVEL CO.
d/b/a SOUTHWEST ASPHALT PAVING and
FISHER SAND & GRAVEL – NEW MEXICO, INC.,

      Plaintiff,

vs.                                                                                     No. 10-cv-0635 RB/SMV

FNF CONSTRUCTION, INC.,
PULICE CONSTRUCTION, INC.,
GARY GIRÓN, individually and as Cabinet Secretary
of the New Mexico Department of Transportation,
MAX VALERIO, individually and as Deputy Secretary
of the New Mexico Department of Transportation,
JED BILLINGS, Chief Executive Officer
of FNF Construction, Inc., and
STEPHEN BASILA, President of Pulice Construction, Inc.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant FNF Construction Inc.'s (FNF's) and Jed Billings's Motion for Partial Summary Judgment No. 1 (Doc. 567), in which Pulice Construction, Inc. (Pulice) and Stephen Basila join (Doc. 587). Fisher Sand & Gravel, Co. (FSG) d/b/a Southwest Asphalt Paving and Fisher Sand & Gravel - New Mexico, Inc. (Plaintiffs) oppose this motion. Jurisdiction arises under 28 U.S.C. § 1331. Having considered the submissions of counsel and relevant law, the Court **DENIES** this motion.

**I.     Background**

FSG, FNF, and Pulice are competitors in the bidding process for state road construction projects in Arizona and New Mexico. Jed Billings is the Chief Executive Officer of FNF, and Steve Basila is the President of Pulice. After the federal government indicted FSG and three of

its former officers for tax fraud, FSG entered into a Deferred Prosecution Agreement ("DPA") in May 2009. Shortly thereafter, according to Plaintiffs, Pulice and FNF utilized FSG's legal problems in a bad faith effort to defame Plaintiffs' business reputation and convince state authorities in Arizona and New Mexico to refrain from awarding state road construction contracts to Plaintiffs.

On July 6, 2010, Plaintiffs filed suit against Defendants in this Court. (Doc. 1). In the Amended Complaint Plaintiffs allege claims for civil conspiracy (Count I), defamation (Counts II-IV), injurious falsehood (Counts V-VI), tortious interference with prospective contractual relations (Count VII), prima facie tort (Count VIII), violation of 42 U.S.C. § 1983 (Count IX), violation of the Racketeer Influenced Corrupt Organization Act (RICO) (Count X), and violation of the New Mexico Unfair Practices Act (UFA) (Count XI). (Doc. 81). The Court dismissed the Section 1983 and UPA claims as well as some of the defamation, injurious falsehood, and tortious interference claims (Counts III and IX and portions of Counts IV, VI, and VII).

FNF moves for summary judgment on Counts IV and VI. Count IV is a defamation claim against FNF and Billings wherein Plaintiffs allege that Billings stated to the New Mexico Department of Transportation (NMDOT) that FSG had recently been convicted of a crime. (Doc. 81 ¶ 201). Count VI is an injurious falsehood claim against FNF wherein Plaintiffs allege that, on June 22, 2009, Billings sent an e-mail message to Max Valerio, the Deputy Secretary of NMDOT, stating that FSG had recently been convicted of a crime. (Doc. 81 ¶ 230). Defendants contend that Billings's characterization of the statement as a conviction is non-actionable. Plaintiffs maintain that the statement was defamatory and supports their claims for defamation and injurious falsehood.

## II. Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In cases where the moving party will not bear the burden of persuasion at trial, it bears the initial responsibility of identifying an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "If the movant meets this initial burden, the burden then shifts to the nonmovant to 'set forth specific facts' from which a rational trier of fact could find for the nonmovant." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007). When applying this standard, the court examines the record, makes all reasonable inferences, and views the facts in the light most favorable to the non-moving party. *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 34 (10th Cir. 2013).

## III. Facts

On June 22, 2009, Billings sent two e-mail messages to Max Valerio, Deputy Secretary of NMDOT. (Doc. 81-4, Ex. K). In an e-mail message sent at 9:53 a.m. to Valerio and Ron Trujillo, an official with NMDOT, Billings requested information as to whether FSG executed a non-debarment certification with their bid proposal or submitted a letter with their bid because FSG could not so certify. (*Id.*) At 10:54 a.m., Billings sent Valerio another e-mail message stating his intention to forward documentation concerning Pulice's bid protest to the Arizona Department of Transportation (ADOT) and separate e-mails would be necessary due to the size of the documents. (*Id.*) In the 10:54 e-mail message, Billings explained that the 9:53 a.m. e-mail message was sent to determine "whether or not [FSG] submitted a false certification or a detailed letter explaining [FSG's] indictment and most recent conviction" (*Id.*) Valerio forwarded the

June 22, 2009 e-mail messages to NMDOT employees Trujillo, Tamara Haas, Robert Ortiz, and Joe Garcia (Doc. 81-4 Ex. K; Doc. 591, Ex. J).

## IV.     Discussion

Defendants advance several arguments in support of their motion for summary judgment, none of which have merit. First, Defendants assert that the statement characterizing the DPA as FSG's "most recent conviction" is non-actionable opinion. "To support a claim for defamation, the communication by defendant must contain a statement of fact." N.M. UNIFORM JURY INSTRUCTIONS (Civil) § 13-1004. Billings referred to FSG's "most recent conviction." This unambiguous statement was a statement of fact rather than opinion and is therefore actionable. *See Marchiondo v. Brown*, 649 P.2d 462, 472 (N.M. 1982).

Second, Defendants argue that Billings's statement is not actionable because the DPA was a conviction as defined by federal law. The applicable federal regulations define a conviction as:

> (a) A judgment or any other determination of guilt of a criminal offense by any court of competent jurisdiction, whether entered upon a verdict or plea, including a plea of nolo contendere; or
>
> (b) Any other resolution that is the functional equivalent of a judgment, including probation before judgment and deferred prosecution. A disposition without the participation of the court is the functional equivalent of a judgment only if it includes an admission of guilt.

2 C.F.R. § 180.920.

New Mexico law defines a conviction as "the establishment of guilt by plea, jury verdict or a finding by the court, and does not include the imposition of a sentence." *Garcia v. Bd of Educ.*, 694 P.2d 1371, 1374 (N.M. Ct. App. 1984). While the plain terms of the DPA establish that FSG admitted to criminal conduct, it did not admit guilt and was never adjudicated guilty. Rather, FSG retained the right to plead not guilty and proceed to trial. The language of the DPA

4

carefully distinguished it from a determination of guilt as to the charged offenses, and FSG was diverted out of the judicial process before guilt was established. Most notably, this Court has determined that the DPA was not the functional equivalent of a conviction. (Doc. 180). The facts of record, construed in the light most favorable to Plaintiffs, demonstrate that the DPA was not a conviction and the statement was not true.

Third, Defendants contend that Plaintiffs cannot establish the statement was published. Publication is an intentional or negligent communication to one other than the person defamed. N.M. UNIFORM JURY INSTRUCTIONS (Civil) § 13-1003. In order to establish publication, Plaintiff must show that at least one person to whom the alleged defamation was communicated was unaware that the communication was false. *Martinez v. Sears, Roebuck & Co.*, 467 P.2d 37, 41 (N.M. 1970). Billings e-mailed the statement to Valerio, who forwarded it to at least four other NMDOT employees. The record contains facts from which a reasonable fact-finder could conclude that the NMDOT personnel understood the defamatory meaning of the statement and thereby caused NMDOT to reconsider its decision and to award the contract to FSG. (Doc. 566-11, Deposition of Tamara Haas; Doc. 591-36, Memorandum from Germaine Chappell). It bears underscoring that the use of the words "most recent conviction" to describe the DPA was both inaccurate and tailored to influence the NMDOT officials. *See Fikes v. Furst*, 81 P.3d 545, 550 (N.M. 2003) (observing that statements must be considered in context). Construed in the light most favorable to Plaintiffs, the record establishes that the statement was published.

Fourth, Defendants argue that Plaintiffs cannot establish actual malice. This Court discussed actual malice in denying FNF's Motion to Dismiss No. 1. (Doc. 176). As the Court noted, actual malice is required only when the plaintiff is a public figure, *see Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991) (citation omitted), or a "limited-purpose public

5

figure." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 246 n.3 (1986). Federal courts look to state law in order to determine whether a party is a public figure. *See id.* at 1136-37. In New Mexico, courts have set out a two-step inquiry: (1) "whether the defamatory material concerns a public controversy or topic of legitimate public concern" and (2) "the nature and extent of [the person's] participation in the controversy." *Furgason v. Clausen*, 785 P.2d 242, 249 (N.M. Ct. App. 1989). A "public controversy" does not encompass every issue that is conceivably of interest to the public. *Time, Inc. v. Firestone*, 424 U.S. 448, 454 (1976). "Rather, 'public controversy' is a legal term of art; the term only encompasses a dispute 'that in fact has received public attention because its ramifications will be felt by persons who are not direct participants.'" *Carr v. Forbes, Inc.*, 259 F.3d 273, 279 (4th Cir. 2001) (quotations omitted). Because the Court determined that Defendants have not established a public controversy existed, (Doc. 176), Plaintiffs need not establish actual malice. Nonetheless, a reasonable fact-finder could conclude that Billings's statement was made with actual malice. Actual malice is defined as "knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *N.Y. Times*, 376 U.S. at 280. Viewed in the light most favorable to Plaintiffs, the evidence in the record indicates that Billings knew that the statement was false and the statement was made with actual malice.

Fifth, Defendants contend that Plaintiffs did not provide notice that they asserted claims based on the 9:53 a.m. e-mail message. The Amended Complaint includes statements from the 9:53 a.m. e-mail message. (Doc. 81 ¶114). In addition, the 10:54 a.m. e-mail message refers to the 9:53 a.m. e-mail message and Plaintiff attached both email messages to the Amended Complaint. (Doc. 81 ¶114). These steps constitute adequate notice that the Plaintiffs assert claims based on the 9:53 a.m. e-mail message. *See* FED. R. CIV. P. 8(a).

Finally, Defendants contend that the e-mail messages were privileged because they were directed toward the appropriate government agency. Under New Mexico law, qualified privilege applies when a statement is made in good faith during the discharge of a public or private duty. N.M. UNIFORM JURY INSTRUCTIONS (Civil) § 13-1012. (itemizing circumstances leading to abuse of qualified privilege, such as when the speaker knew or should have known the statement was false or published for an improper purpose or beyond what was reasonably necessary). Qualified privilege is premised on good faith and the discharge of a public or private duty. *See Bookout v. Griffin,* 639 P.2d 1190 (N.M.1982). Defendants have failed to point to any public or private duty that would compel Billings to disparage a competitor. Moreover, the existence of a qualified privilege "has the effect of taking away from defamatory language the presumption of malice in the publication, and cast[ing] upon the plaintiff the burden of proving actual malice." *Gengler v. Phelps,* 589 P.2d 1056 (N.M.Ct.App.1978). The record, construed in the light most favorable to Plaintiffs, would allow a reasonable fact finder to conclude that Billings acted with actual malice. Under these circumstances, the e-mail messages were not privileged.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment No. 1 (Doc. 567) is **DENIED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**