IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**FISHER SAND & GRAVEL CO.**
**d/b/a SOUTHWEST ASPHALT PAVING and**
**FISHER SAND & GRAVEL – NEW MEXICO, INC.,**

     **Plaintiff,**

vs.                                                                                                   No. 10-cv-0635 RB/SMV

**FNF CONSTRUCTION, INC.,**
**PULICE CONSTRUCTION, INC.,**
**GARY GIRÓN, individually and as Cabinet Secretary**
**of the New Mexico Department of Transportation,**
**MAX VALERIO, individually and as Deputy Secretary**
**of the New Mexico Department of Transportation,**
**JED BILLINGS, Chief Executive Officer**
**of FNF Construction, Inc., and**
**STEPHEN BASILA, President of Pulice Construction, Inc.,**

     **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant FNF Construction Inc.'s (FNF's) Motion for Partial Summary Judgment No. 2 (Doc. 569), in which Pulice Construction, Inc. (Pulice) and Stephen Basila join (Doc. 587). Fisher Sand & Gravel, Co. (FSG) d/b/a Southwest Asphalt Paving and Fisher Sand & Gravel - New Mexico, Inc. (Plaintiffs) oppose this motion. Jurisdiction arises under 28 U.S.C. § 1331. Having considered the submissions of counsel and relevant law, the Court **DENIES** this motion.

**I.     Background**

Plaintiffs, FNF, and Pulice are competitors in the bidding process for state road construction projects in Arizona and New Mexico. Jed Billings is the Chief Executive Officer of FNF, and Steve Basila is the President of Pulice. After the federal government indicted FSG and

three of its former officers for tax fraud, FSG entered into a Deferred Prosecution Agreement ("DPA") in May 2009. Shortly thereafter, according to Plaintiffs, Pulice and FNF utilized FSG's legal problems in a bad faith effort to defame Plaintiffs' business reputation and convince state authorities in Arizona and New Mexico to refrain from awarding state road construction contracts to Plaintiffs.

On July 6, 2010, Plaintiffs filed suit against Defendants in this Court. (Doc. 1). In the Amended Complaint Plaintiffs allege claims for civil conspiracy (Count I), defamation (Counts II-IV), injurious falsehood (Counts V-VI), tortious interference with prospective and existing contractual relations (Count VII), prima facie tort (Count VIII), violation of 42 U.S.C. § 1983 (Count IX), violation of the Racketeer Influenced Corrupt Organization Act (RICO) (Count X), and violation of the New Mexico Unfair Practices Act (UFA) (Count XI). (Doc. 81). The Court dismissed the Section 1983 and UPA claims as well as some of the defamation, injurious falsehood, and the tortious interference with existing contractual relations claim (Counts III and IX and portions of Counts IV, VI, and VII). (Docs. 180, 188, 249, 251).

Defendants move for summary judgment on what remains of Count VII, which is Plaintiffs' claim for tortious interference with prospective contractual relations. Therein, Plaintiffs allege that FNF used improper means to interfere with the implied contract between FSG and NMDOT requiring NMDOT to fairly consider bids in accord with applicable statutes and codes; and the implied contract between FSG and NMDOT to award FSG, as the lowest responsible bidder, the Las Cruces Project. (Doc. 81 ¶¶ 237-273). Defendants contend that Plaintiffs cannot rely on an opinion issued by the Honorable Sarah Singleton, First Judicial District Judge for the State of New Mexico in the case styled *Fisher Sand and Gravel-New Mexico v. New Mexico Department of Transportation* and numbered D-101-CV-200902606 as a

basis to find FNF's communications with NMDOT were the improper means necessary to establish the tort. Defendants additionally contend that FNF's communications cannot be improper means because such communications are protected by the First Amendment Right to Petition. Plaintiffs respond that they have demonstrated that FNF's communications constitute an improper means for purposes of the tort.

## II.     Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In cases where the moving party will not bear the burden of persuasion at trial, it bears the initial responsibility of identifying an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "If the movant meets this initial burden, the burden then shifts to the nonmovant to 'set forth specific facts' from which a rational trier of fact could find for the nonmovant." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007). When applying this standard, the court examines the record, makes all reasonable inferences, and views the facts in the light most favorable to the non-moving party. *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 34 (10th Cir. 2013).

## III.    Facts

On June 22, 2009, Billings sent two e-mail messages to Max Valerio, Deputy Secretary of NMDOT. (Doc. 81-4, Ex. K). In an e-mail message sent at 9:53 a.m. to Valerio and Ron Trujillo, an official with NMDOT, Billings requested information as to whether FSG executed a non-debarment certification with their bid proposal or submitted a letter with their bid because FSG could not so certify. (*Id.*) At 10:54 a.m., Billings sent Valerio another e-mail message stating his intention to forward documentation concerning Pulice's bid protest to the Arizona

Department of Transportation (ADOT) and separate e-mails would be necessary due to the size of the documents. (*Id.*) In the 10:54 e-mail message, Billings explained that the 9:53 a.m. e-mail message was sent to determine "whether or not [FSG] submitted a false certification or a detailed letter explaining [FSG's] indictment and most recent conviction." (*Id.*) Valerio forwarded the June 22, 2009 e-mail messages to NMDOT employees Trujillo, Tamara Haas, Robert Ortiz, and Joe Garcia. (Doc. 81-4 Ex. K; Doc. 591, Ex. J).

## IV.   Discussion

New Mexico recognizes the tort of interference with contractual relations based on both existing and prospective contracts. *Zarr v. Wash. Tru Solutions, LLC*, 208 P.3d 919, 921 (N.M. Ct. App. 2009) (citations omitted). In order to prevail on a claim for tortious interference with an existing or prospective contract, FSG must prove that (1) FNF knew of the contract; (2) performance of the contract was refused; (3) FNF played an "active and substantial part" in causing FSG to lose the benefit of the contract; (4) damages resulted from the breach; and (5) FNF induced the breach "without justification or privilege." *Gregory Rockhouse Ranch, LLC v. Glenn's Water Well*, 191 P.3d 548, 557 (N.M. Ct. App. 2008) (abrogated in irrelevant part by *Helena Chem. Co. v. Uribe*, 281 P.3d 237 (N.M. 2012)) (citations omitted); *Ettenson v. Burke*, 17 P.3d 440, 446 (N.M. Ct. App. 2008) (citations omitted). "Without justification" means that FNF must have acted with an improper motive or through improper means, such as violating a statute or using fraudulent misrepresentations. *Ettenson*, 17 P.3d at 446 (citations omitted); RESTATEMENT (SECOND) OF TORTS § 767 cmt. c (1977). However, when a claim relates to a prospective contract, the meaning of "without justification" is modified, and a plaintiff must show that the defendant acted through improper means or with the sole motive of harming the plaintiff. *Fikes v. Furst*, 81 P.3d 545, 552 (N.M. 2003) (citation omitted).

FNF focuses on the issue of whether FNF acted with improper means. However, the components of the "without justification" element are disjunctive. It bears underscoring that Plaintiffs must prove FNF acted with either improper means *or* with the sole motive of harming FSG. *Fikes*, 81 P.3d at 522 (emphasis added). The Court has found that there are genuine issues of material fact as to whether Billings acted with actual malice, *i.e.* with the sole motive of harming FSG when he sent the e-mail messages. (Doc. 685 a 6). The evidence of record, viewed in the light most favorable to Plaintiffs, establishes that FNF conspired with others to, in effect, run Plaintiffs out of business in New Mexico and Arizona. This is sufficient to establish that FNF acted with the sole motive of harming FSG. Therefore, summary judgment will be denied on this argument.

Second, FNF's reliance on *Brule v. Blue Cross*, 455 Fed. Appx. 836, 2011 WL 6425435 (10th Cir. 2011) (unpublished), is misplaced. *Brule* stands for the proposition that "the disclosure of truthful information . . . cannot constitute improper means under New Mexico law and cannot be the basis for liability." *Id*. at *6. FNF argues that Plaintiffs seek to hold it liable based on communications that contained only truthful information. However, the Court has determined issues of material fact exist as to whether the communications were false. (Doc. 685 at 5). Notably, FNF's argument that it did not engage in improper means because it did not defame Plaintiffs fails for the same reason. Accordingly, the record contains evidence that, when construed in the light most favorable to Plaintiffs, would allow a jury to find that FNF acted with improper means because it defamed FSG.

Finally, FNF's argument that it did not cause Plaintiffs' damages is unavailing. This argument is based on the fact that Plaintiffs have no direct evidence that Valerio was influenced by the communications. Valerio has denied he was influenced by the communications. However,

there is circumstantial evidence to the contrary. (*See* Plaintiffs' timeline of events, Doc. 593 at 9). Based on Plaintiff's timeline of events, Judge Singleton found that "the only occurrence of significance between NMDOT's June 18, 2009 recommendation [to award the Las Cruces contract to Fisher] and its July 9, 2009 decision to award the contract to FNF was FNF's improper communications with NMDOT." (Doc. 81, Ex. P). And at least one high-level NMDOT representative, Germaine Chapelle, testified in her deposition that no significant facts changed between the two dates besides FNF's involvement. (Doc. 591, Ex. H). Viewed in the light most favorable to Plaintiffs, a jury could determine that Valerio's testimony was not credible, and that Valerio and the other NMDOT decision-makers were, in fact, influenced by the communications from FNF. The record, construed in the light most favorable to Plaintiffs, would allow a reasonable fact finder to conclude that FNF acted with improper means or with the sole motive of harming Plaintiffs.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment No. 2 (Doc. 569) is **DENIED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**