IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**FISHER SAND & GRAVEL CO.**
**d/b/a SOUTHWEST ASPHALT PAVING and**
**FISHER SAND & GRAVEL – NEW MEXICO, INC.,**

      **Plaintiff,**

vs.                                             No. 10-cv-0635 RB/SMV

**FNF CONSTRUCTION, INC.,**
**PULICE CONSTRUCTION, INC.,**
**GARY GIRÓN, individually and as Cabinet Secretary**
**of the New Mexico Department of Transportation,**
**MAX VALERIO, individually and as Deputy Secretary**
**of the New Mexico Department of Transportation,**
**JED BILLINGS, Chief Executive Officer**
**of FNF Construction, Inc., and**
**STEPHEN BASILA, President of Pulice Construction, Inc.,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant FNF Construction Inc.'s (FNF's) and Jed Billings's Motion for Partial Summary Judgment No. 4 (Doc. 573), in which Pulice Construction, Inc. (Pulice) and Stephen Basila join (Doc. 587). Fisher Sand & Gravel, Co. (FSG) d/b/a Southwest Asphalt Paving and Fisher Sand & Gravel - New Mexico, Inc. (Plaintiffs) oppose this motion. Jurisdiction arises under 28 U.S.C. § 1331. Having considered the submissions of counsel and relevant law, the Court **DENIES** this motion as to Counts I and VIII and **GRANTS** this motion as to Count X.

**I.    Background**

Plaintiffs, FNF, and Pulice are competitors in the bidding process for state road construction projects in Arizona and New Mexico. Jed Billings is the Chief Executive Officer of

FNF, and Steve Basila is the President of Pulice. After the federal government indicted FSG and three of its former officers for tax fraud, FSG entered into a Deferred Prosecution Agreement ("DPA") in May 2009. Shortly thereafter, according to Plaintiffs, Pulice and FNF utilized FSG's legal problems in a bad faith effort to defame Plaintiffs' business reputation and convince state authorities in Arizona and New Mexico to refrain from awarding state road construction contracts to Plaintiffs.

On July 6, 2010, Plaintiffs filed suit against Defendants in this Court. (Doc. 1). In the Amended Complaint, Plaintiffs allege claims for civil conspiracy (Count I), defamation (Counts II-IV), injurious falsehood (Counts V-VI), tortious interference with prospective contractual relations (Count VII), prima facie tort (Count VIII), violation of 42 U.S.C. § 1983 (Count IX), violation of the Racketeer Influenced Corrupt Organization Act (RICO) (Count X), and violation of the New Mexico Unfair Practices Act (UFA) (Count XI). (Doc. 81). The Court dismissed the Section 1983 and UPA claims as well as some of the defamation, injurious falsehood, and tortious interference claims (Counts III and IX and portions of Counts IV, VI, and VII).

Defendants move for summary judgment on Plaintiffs' claims for civil conspiracy (Count I), prima facie tort (Count VIII), and for violation of RICO (Count X). Defendants contend that the prima facie tort claim is duplicative and Plaintiffs cannot prove the elements of this claim. As for the civil conspiracy claim, Defendants argue that Plaintiffs are unable to establish an underlying tort or an express agreement to commit wrongdoing. With respect to the RICO claim, Defendants assert that Plaintiffs failed to meet the statutory requirements. Plaintiffs maintain that the prima facie tort claim was properly pleaded in the alternative, the record contains evidence to meet the elements of the prima facie tort and civil conspiracy claims, and the evidence of record satisfies the statutory requirements of the RICO claim.

**II.    Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In cases where the moving party will not bear the burden of persuasion at trial, it bears the initial responsibility of identifying an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "If the movant meets this initial burden, the burden then shifts to the nonmovant to 'set forth specific facts' from which a rational trier of fact could find for the nonmovant." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007). When applying this standard, the court examines the record, makes all reasonable inferences, and views the facts in the light most favorable to the non-moving party. *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 34 (10th Cir. 2013).

**III.   Facts**

On June 22, 2009, Billings sent two e-mail messages to Max Valerio, Deputy Secretary of NMDOT. (Doc. 81-4, Ex. K). In an e-mail message sent at 9:53 a.m. to Valerio and Ron Trujillo, an official with NMDOT, Billings requested information as to whether FSG executed a non-debarment certification with their bid proposal or submitted a letter with their bid because FSG could not so certify. (*Id.*) At 10:54 a.m., Billings sent Valerio another e-mail message stating his intention to forward documentation concerning Pulice's bid protest to the Arizona Department of Transportation (ADOT) and separate e-mails would be necessary due to the size of the documents. (*Id.*) In the 10:54 e-mail message, Billings explained that the 9:53 a.m. e-mail message was sent to determine "whether or not [FSG] submitted a false certification or a detailed letter explaining [FSG's] indictment and most recent conviction" (*Id.*) Valerio forwarded the

June 22, 2009 e-mail messages to NMDOT employees Trujillo, Tamara Haas, Robert Ortiz, and Joe Garcia (Doc. 81-4 Ex. K; Doc. 591, Ex. J).

On June 25, 2009, Josh Grabel, an attorney for FNF, sent a letter, via e-mail, to David Coriz and Germaine Chappelle, General Counsel to NMDOT, styled as a public records request related to the Las Cruces project. (Doc. 81-4 Ex. L, at 1-3). In the letter, Grabel stated that FNF intended to file a bid protest against a proposed award of the contract to FSG because, based on FSG's "now admitted consistent and repeated illegal and unethical conduct, as evidenced by the indictment and eventual entering of a Deferred Prosecution Agreement" awarding it a contract that included federal dollars would be inappropriate. (*Id.* at 2).

On July 22, 2009, Grabel sent a letter to Chappelle regarding alleged misrepresentations by FSG in a prior project on Interstate 40 (I-40). (Doc. 81-4 Ex. M, at 1-11). In that letter, FNF provided a summary of the issues related to the I-40 Project in which FSG "prevailed in a bid protest against FNF by making representations to NMDOT . . . that were either untrue, incomplete or misleading." (*Id.* at 1). Over three pages, Grabel described two representations that FSG made and the reasons that FNF considered them to be misrepresentations. (*Id.* at 1-3). Grabel concluded the letter by stating that FNF did not seek NMDOT's reconsideration of the bid protest on the I-40 project, but that "NMDOT now knows that those misrepresentations were, just like FSG's 2001 through 2004 tax returns, false statements." (*Id.* at 3). Grabel then suggested that NMDOT consider "these facts in deciding whether it wants to continue 'partnering' with a contractor who is unwilling to disclose the full truth to NMDOT." (*Id.*) Grabel attached two letters that FSG sent to NMDOT in connection with the I-40 project on which he based some of his assertions in the letter. (*Id.* at 4-11). That same day, Grabel sent two

4

e-mails to NMDOT counsel Dan Gershon and Chappelle about a bid protest against FSG that was pending in Nevada. (Compl. at ¶¶ 131, 227).

Pulice and FNF had an understanding that they would share information to convince the NMDOT and the ADOT that FSG was neither a responsible nor responsive bidder. (Doc. 591, Ex. Q). Pulice and FNF had the common goal to prevent FSG from obtaining ADOT and NMDOT contracts. (Doc. 591, Ex. G, Q). FNF and Pulice communicated with each other during the process of protesting FSG's bid in Arizona and contesting FSG's responsibility in New Mexico in order to assist each other. (Doc. 591, Ex. K, S). Counsel for Pulice billed Pulice for numerous phone calls and emails with FNF, including FNF helping with Pulice's bid protest, and FNF discussing the status of the New Mexico situation. (Doc. 591, Ex. I, Y). Pulice paid these invoices in full. (Doc. 591, Ex. S). On June 9, 2009 Basila forwarded a copy of Pulice's bid protest to Billings and told Billings to "[f]eel free to call [Pulice attorney] Sienicki if you have additional information that might help." (Doc. 591, Ex. S). According to Scotty Rand, a former employee of FNF, Billings worked with Basila on Pulice's bid protest with the goal of putting FSG out of business. (Doc 591, Ex. G).

## IV. Discussion

### A. Prima facie tort claim

FNF contends that Plaintiffs' prima facie tort claim is duplicative of their tortious interference with prospective contractual relations (tortious interference) claim. Prima facie tort exists to provide a "remedy for intentionally committed acts that do not fit within the contours of accepted torts." *Schmitz v. Smentowski*, 785 P.2d 726, 736 (N.M. 1990). "The theory underlying prima facie tort is that a party that intends to cause injury to another should be liable for that injury, if the conduct is generally culpable and not justifiable under the circumstances." *Id*. at

734. FSG pleaded the prima facie tort claim as an alternative theory. Thus, if at the close of the evidence, Plaintiffs' proof is susceptible to submission under one of the other tort theories alleged in the Amended Complaint, the action will be submitted to the jury on that theory and not under prima facie tort. *Id*. at 736. Defendants' alleged wrongdoings are lawful. *Id*. Notably, the Court has determined that the prima facie tort allegations diverge from Plaintiffs' tortious interference allegations. (Doc. 180). For these reasons, the prima facie tort claim is not duplicative of the tortious interference claim.

Additionally, FNF argues that Plaintiffs cannot establish the elements of prima facie tort. A plaintiff asserting a claim for prima facie tort must present facts that, if true, establish: (1) that the defendant committed an intentional, lawful act; (2) that the defendant intended to injure the plaintiff; (3) injury to the plaintiff resulted from the act; and (4) there was no justification for the act. *Kitchell v. Pub. Serv. Co. of N.M.*, 972 P.2d 344, 348 (N.M. 1998). The facts of record, construed in the light most favorable to Plaintiffs, demonstrate that FNF intentionally communicated with NMDOT and ADOT decision-makers with the intent to injure FSG, the communications caused NMDOT to reject FSG's bids, and FNF acted without justification. (Doc. 591, Ex. G-L, O-S, V Y-Z, AA-GG, NN, QQ). Viewed in the light most favorable to Plaintiffs, the evidence in the record establishes a claim for prima facie tort.

### B.     Civil conspiracy claim

FNF contends that Plaintiffs have not presented evidence of an underlying tort that would support their civil conspiracy claim. In order to establish a civil conspiracy, Plaintiffs must prove that (1) a conspiracy between two or more defendants existed; (2) specific wrongful acts were carried out by Defendants pursuant to the conspiracy; and (3) Plaintiffs were damaged as a result of such acts. *Ettenson v. Burke*, 17 P.3d 440 (N.M. Ct. App. 2000). Civil conspiracy is not an

independent basis for liability but is a means to hold co-conspirators liable for damages established in a separate claim against one of the conspirators. *Seeds v. Lucero*, 113 P.3d 859, 864 (N.M. Ct. App. 2005) (citing *Ettenson*, 17 P.3d at 445). The Court has determined that Plaintiffs are entitled to proceed to trial on their claims for defamation, prima facie tort, injurious falsehood, and tortious interference with contractual relations. Simply put, Plaintiffs have presented sufficient evidence of underlying torts to support their civil conspiracy claim.

Also related to the civil conspiracy claim, FNF asserts Plaintiffs cannot establish that Defendants agreed to commit any wrongful act. A civil conspiracy is "an agreement to accomplish an unlawful purpose or a lawful purpose by unlawful means." *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 42 P.3d 1221, 1235 (N.M. Ct. App. 2001) (citation omitted). A conspiracy may be established by circumstantial evidence from the facts and circumstances, including the acts of the alleged co-conspirators. *Santa Fe Techs., Inc.*, 42 P.3d at 1236 (citing *Morris v. Dodge Country, Inc.*, 513 P.2d 1273, 1274 (N.M. Ct. App. 1973)). The facts of record, construed in the light most favorable to Plaintiffs, would allow a reasonable juror to find that that Defendants agreed to work together to defame FSG and achieve their common objective of eliminating FSG as a competitor. (Doc. 591, Ex. A, N-U, RR-TT). Under these circumstances, summary judgment would be inappropriate on the civil conspiracy claim.

### C.     RICO claim

FNF contends that Plaintiffs are unable to establish a RICO claim. The Court agrees with FNF on this contention. Indeed, when ruling on Defendants' Motion to Dismiss No. 4, the Court expressed skepticism that Plaintiffs' claims rise to the level of the criminal activity that Congress sought to penalize through RICO. (Doc. 188). Even with the benefit of this warning, Plaintiffs

have been unable to marshal proof to sustain their RICO claim. In that the evidence of record does not support Plaintiffs' RICO claim, the Court's skepticism was well-founded.

Congress enacted RICO as Title IX of the Organized Crime Control Act to combat organized crime through both criminal prosecutions and private actions. *See* 18 U.S.C. §§ 1961-1969. The "legislative history forcefully supports the view that the major purpose of Title IX is to address the infiltration of legitimate business by organized crime." *United States v. Turkette,* 452 U.S. 576, 591 (1981). RICO provides a private right of action under 18 U.S.C. § 1964(c), which provides in pertinent part:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c). The Tenth Circuit has held that "[t]o successfully state a RICO claim, a plaintiff must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Robbins v. Wilkie,* 300 F.3d 1208, 1210 (10th Cir. 2002) (quotation omitted).

The second RICO element, an enterprise, "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Despite the apparent breadth of this definition, to prevail on a RICO claim, a plaintiff must establish three components: (1) that there is an ongoing organization with a decision-making framework or mechanism for controlling the group, (2) that various associates function as a continuing unit, and (3) that the enterprise exists separate and apart from the pattern of racketeering activity. *United States v. Smith,* 413 F.3d 1253, 1266-67 (10th Cir. 2005) (quotations omitted). Viewed in the light most favorable to Plaintiffs, the record contains no evidence that would support the existence of an enterprise

separate and apart from the pattern of alleged racketeering activity. *See Turkette,* 452 U.S. 576, 583 (1981). Rather, the alleged enterprise and the alleged pattern of racketeering activity are the same. *See Handeen v. Lemaire,* 112 F.3d 1339, 1352 (8th Cir. 1997) ("In assessing whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering, it is our normal practice to determine if the enterprise would still exist were the predicate acts removed from the equation."). Because the evidence does not support a finding of the existence of an enterprise Plaintiffs are unable to establish the second element of a RICO claim. Under these circumstances, summary judgment will be granted on Plaintiffs' RICO claim.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment No. 4 (Doc. 573) is **DENIED** as to Plaintiffs claims for civil conspiracy (Count I) and prima facie tort (Count VIII).

**IT IS FURTHER ORDERED** that Defendants' Motion for Partial Summary Judgment No. 4 (Doc. 573) is **GRANTED** as to Plaintiffs' RICO claim (Count X).

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**